Brian Dumont JACKSON, Appellant,

v.

The STATE of Texas.

No. 2–95–478–CR.

Court of Appeals of Texas, Fort Worth.

Sept. 26, 1996.

John H. Morris, Gainesville, for Appellant.

Janelle Haverkamp, District Attorney, Gainesville, for Appellee.

Before DAUPHINOT, J., and H. TOD WEAVER (Retired) and CHARLES F. CAMPBELL, JJ. (Sitting by Assignment).

**OPINION**

CHARLES F. CAMPBELL, Justice (Assigned).

Appellant Brian Dumont Jackson was convicted by a jury of the offense of deadly conduct as alleged in the indictment. The jury assessed punishment at ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. We affirm.

■ In his sole point of error, Jackson claims the trial court erred in permitting the jury to separate, without his consent and over his counsel's objection, after deliberations had begun in the punishment phase of the trial. The record reflects that while the jury was deliberating on punishment, a message was conveyed by Martin's spouse to the trial judge that juror Martin needed some medical attention at a local hospital. The trial judge allowed the juror to go to the hospital after admonishing her not to discuss the case with anyone. The judge then sequestered the remaining eleven jurors after admonishing them to cease deliberations until juror Martin returned. When juror Martin returned, the jury continued its deliberations until reaching a punishment verdict. The record reflects that Jackson's counsel timely objected to the separation of the jury

and timely moved for a mistrial. Although the trial court never explicitly ruled on the objection, the motion was denied. Jackson argues this separation allowed by the trial court was error under TEX. CODE CRIM. PROC. ANN. art. 35.23 (Vernon Supp.1996). We agree.

Article 35.23 in pertinent part provides:

The court on its own motion may and on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate, after which the jury shall be kept together and not permitted to separate except to the extent of housing female jurors separate and apart from male jurors, until a verdict has been rendered or the jury finally discharged.

*Id.* In the instant case, Jackson made a timely objection to the action of the court in permitting the jury to separate. *See Sanchez v. State*, 906 S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, pet. ref'd & pet. dism'd). He also made a timely motion for mistrial, which was denied. The quoted provision of article 35.23 and its forerunners have long been held to be mandatory. *Hood v. State*, 828 S.W.2d 87, 93 (Tex.App.—Austin 1992, no pet.). Accordingly, the trial court erred in allowing the separation.

■ Having sustained Jackson's point of error, we must decide whether TEX. R. APP. P. 81(b)(2)[1] is applicable to error committed under article 35.23. Recently, this court, referring to *Hood*, observed:

We do not believe that *Hood* stands for the proposition that an appellate court does not apply Rule 81(b)(2) to a violation of the mandatory provision of article 35.23. Instead, we believe it means that an appellate court cannot affirm a conviction under Rule 81(b)(2) after a trial court errs by allowing a separation under article 35.23 unless concrete evidence exists in the record on which the appellate court could meaningfully gauge or quantify the harm caused by the trial court allowing the separation.

---

1. Rule 81(b)(2) provides: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX. R. APP. P. 81(b)(2).

*Sanchez,* 906 S.W.2d at 179. This is the same basic conclusion expressed by Justice Jones in a concurring opinion in *Hood,* where he opined:

> It seems to [me] that the "harm analysis" mandated by Rule 81(b)(2) can be applied to *any* error without fear of diminishing an appellant's rights. If the appellate record in a particular case does not contain enough data from which to gauge or quantify the effect of an error, then the reviewing court obviously could not determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment. Accordingly, Rule 81(b)(2) would require that the conviction in such a case be reversed. This approach strikes [me] as far simpler to administer and apply than one in which reviewing courts are left to divine which types of error are subject to a harm analysis and which are not.

*Hood,* 828 S.W.2d at 96 (Jones, J., concurring). Thus, conversely, if there is concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error, then the appellate court should do so, bearing in mind, of course, that the burden of proving absence of harm always rests on the State under Rule 81(b)(2), and we so hold.[2] In the instant case, the State argues that there is abundant data that shows the error was harmless. We agree.

The record shows that juror Martin was absent from the courthouse for just over one hour. During Martin's absence, the trial court ordered the remaining eleven jurors be sequestered and specifically ordered those jurors to cease their deliberations until juror Martin returned. Upon Martin's return, the State requested and was granted the opportunity to question Martin, under oath, about her absence. This hearing was conducted out of the presence of the remaining eleven jurors. Martin testified that, during her absence, she had no discussions with anyone about the case; that she was not exposed to and did not expose herself to any media coverage of the trial; and that she did not deliberate upon a punishment in the case. Martin then rejoined the remaining jurors and deliberations resumed. After the jury reached a punishment verdict, the jury was brought back into the courtroom and delivered its punishment verdict to the judge. After the judge formally excused the jury from further service, the State requested a hearing be held with regard to the remaining eleven jurors. A hearing was then conducted, and each of the remaining jurors testified that they ceased deliberating or discussing appellant's case after being admonished accordingly by the trial judge. They testified they resumed deliberations upon juror Martin's return.

In his brief, Jackson argues that the jurors were intimidated into answering questions favorably to the State by the specter of contempt proceedings. This argument is wholly unsupported by the record. The word "contempt" was never mentioned to any juror, and the questions asked by the prosecutor were rather pedestrian and merely dealt with whether the jurors followed the trial judge's admonitions.

In *Sanchez,* we observed that the record in that case contained no evidence under which we could quantify or gauge the harm caused by the separation. *Sanchez,* 906 S.W.2d at 179. In the instant case, the evidence is abundant[3] and was presented by the State, in all probability, for the specific purpose of demonstrating that the error was harmless. We thus conclude that, although the trial court committed error in allowing the separation under article 35.23, the State has shown to our satisfaction the error was harmless beyond a reasonable doubt and did not con-

---

**2.** We recognize that there may still be some constitutional errors about which it is either extremely difficult to know whether they might have affected the outcome or that the likelihood they have influenced the outcome is so strong, that it is not worth expending the judicial resources necessary to evaluate the effect of the error in particular cases. *See United States v. Cronic,* 466 U.S. 648, 659–62, 104 S.Ct. 2039, 2047–49, 80 L.Ed.2d 657, 668–70 (1984); *see,*

*e.g., Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (statute gave trial judge a pecuniary interest in finding defendant guilty).

**3.** Indeed, if the error is not harmless under these facts, then it is difficult to imagine that it would ever be harmless where a violation of article 35.23 has occurred.

tribute to the punishment in this case. Jackson's sole point of error is overruled.

The judgment of the trial court is affirmed.

