Leonardo CASIAS, III, a/k/a
Tweety, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–99–00781–CR.

Court of Appeals of Texas,
Austin.

Jan. 19, 2001.

Barbara Schwarz Young, Temple, for Appellant.

James T. Russell, Admin. Asst., Belton, for Appellee.

Before Justices B.A. SMITH, PATTERSON and JONES.*

J. WOODFIN JONES, Justice (Assigned).

Appellant Leonardo Casias, III was convicted of murder and sentenced to fifty-

---

\* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment.

five years' imprisonment and a $10,000 fine. *See* Tex.Penal Code Ann. § 19.02 (West 1994). On appeal, appellant complains that the trial court erred in (1) allowing the jury to separate during deliberations, (2) failing to declare a mistrial due to the jury separation, and (3) failing to instruct the jury as to corroboration of accomplice witness testimony. In addition, appellant complains that the evidence was insufficient to corroborate the accomplice witness testimony and that he failed to receive a fair trial due to ineffective assistance of counsel. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 23, 1999, Michael Ray Shaw took his wife Carmen, his daughter Sabrina, and Sabrina's friend Marcus Schoeffler to dinner. Upon returning home, Carmen Shaw was approaching the house when she was shot in the head and killed. The testimony at trial established that Oscar Sanchez, intending to shoot Schoeffler, accidentally shot and killed Carmen Shaw. Appellant and Oscar were in a rival gang to Schoeffler's, and it appears that this shooting was to seek revenge for a previous shooting of appellant in which Schoeffler was involved.

On the day of the shooting, Matthew Aragon, a juvenile and fellow gang member, informed appellant and Oscar that Schoeffler was back in town. As they drove around together in a van later that evening, appellant, Oscar, Aragon, Erica Casias Sanchez, and Marco Sanchez saw Schoeffler's car parked outside the Shaw residence. Oscar told Erica to stop the van, and he and appellant got out. Aragon and Marco, both of whom testified for the State, were also in the van but were told by appellant and Oscar to remain in the van while they went to the house. Appellant instructed Erica to drive around the block while they went up to the house. Appellant accompanied Oscar to the

*See* Tex.Gov't Code Ann. § 75.003(a)(1) (West 1998).

Shaws' house where Oscar shot Carmen Shaw. Aragon and Marco both testified that they heard gun shots while driving around the block with Erica. Erica drove back by the house and picked up appellant and Oscar as they ran from the Shaw residence. Appellant, Oscar, and Erica were subsequently arrested.

Appellant was indicted on murder charges as a party to the offense. At trial, the jury returned a guilty verdict as to the charge of murder, and at 4:44 p.m. the case proceeded to the punishment phase. At 8:10 p.m. the jury sent out a note indicating that they might be deadlocked. Over appellant's objection, the trial court gave the jury a "dynamite" instruction. The jury returned to deliberations at 8:18 p.m.

Throughout the trial it was known that juror Willardson was diabetic. Despite this fact, no food was provided to the jurors during their punishment deliberations; Willardson began to feel ill. About 8:25 p.m., after failing to locate Willardson's wife to bring him medication, the trial court granted permission for a deputy to escort Willardson to his car to find his medication. When he was unable to find any, Willardson immediately returned to the courthouse; the judge contacted the medical staff in the jail to attend to him. Willardson was separated from the jury for no more than five or ten minutes. Shortly after Willardson's return, the jury reached a verdict.

At no time during Willardson's separation from the jury did the court notify appellant of the separation or the medical emergency. Appellant learned of it only because his counsel saw Willardson leaving the courthouse with the deputy.

Prior to the trial on April 23, 1999, appellant filed a "Motion to Not Permit the Jury to Separate." Although the record contains no indication that the trial court ruled on this motion, or was even aware of it, in all phases of the trial the court instructed the jury not to separate during its deliberations. After the jury returned its verdict, appellant made a motion for mistrial based on the illegal separation, which was denied. The State then requested that the jury be questioned to determine whether it deliberated while Willardson was absent. Willardson stated that he did not talk to anyone about the case or deliberate while he was separated from the other jurors. He also testified that pursuant to the court's instructions, a deputy had admonished the entire jury against deliberating while Willardson was absent. The court then asked each individual juror whether any deliberations occurred while Willardson was gone; each juror answered no.

## DISCUSSION

### *Jury separation*

Appellant complains by four issues that (1) the trial court erred in allowing the jury to separate during its deliberations, (2) the trial court erred in failing to admonish the jury prior to the separation, (3) the jury committed misconduct when they separated during deliberations, and (4) the trial court erred in failing to declare a mistrial. The Texas Code of Criminal Procedure provides:

> When jurors have been sworn in a felony case, the court may, at its discretion, permit the jurors to separate until the court has given its charge to the jury. The court on its own motion may and on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate, after which the jury shall be kept together, and not permitted to separate except to the extent of housing female jurors separate and apart from male jurors, until a verdict has been rendered or the jury finally discharged.... In any case in which the jury is permitted to separate, the court shall first give the jurors proper instructions with regard to their conduct as jurors when so separated.

Tex.Code Crim. Proc. Ann. art. 35.23 (West Supp.2001). The State argues that appellant did not preserve his complaint because he failed to make a timely motion as required under article 35.23. *See id.* We will assume without deciding that appellant's pretrial motion requesting that the jury not separate was sufficient to preserve his complaint on appeal.

■ By allowing the jury to separate, appellant argues, the trial court committed reversible error. When error is established in a criminal case, the reviewing court's disposition of the appeal is governed by Rule 44.2 of the Rules of Appellate Procedure. *See Jackson v. State,* 931 S.W.2d 46, 47 (Tex.App.—Fort Worth 1996, no pet.) (holding that Rule 44.2, formerly Rule 81(b)(2), is applicable to error committed under article 35.23). In the event of constitutional error, Rule 44.2(a) effectively creates a rebuttable presumption of harm: "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Merritt v. State,* 982 S.W.2d 634, 636 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd untimely filed) (quoting Tex.R.App.P. 44.2(a)). On the other hand, any other error, defect, irregularity, or variance (i.e., non-constitutional error) that does not affect substantial rights must be disregarded. Tex. R.App.P. 42.2(b). Because the asserted error here was based on statutory law, we believe the error, if any, was non-constitutional. The record shows that the jury did not deliberate while Willardson was absent and that Willardson did not deliberate during his absence. Appellant argues that the harm lies in not knowing exactly what circumstances may have influenced Willardson during the five or ten minutes he was looking for his medication. We will not indulge in such speculation. We conclude that the separation did not affect appellant's substantial rights and, there-

fore, the test for reversible error under Rule 44.2(b) has not been met.

■ Even if the separation was constitutional error, however, we conclude it does not constitute reversible error. An appellate court may affirm the trial court's judgment in the face of constitutional error if (1) concrete evidence exists in the record on which the appellate court can meaningfully gauge or quantify the harm caused by the trial court's error, and (2) the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Jackson,* 931 S.W.2d at 47 (citing *Sanchez v. State,* 906 S.W.2d 176, 178 (Tex.App.—Fort Worth 1995, pet. ref'd & pet. dism'd), and *Hood v. State,* 828 S.W.2d 87, 93 (Tex. App.—Austin 1992, no pet.)).

In *Jackson,* appellant claimed that the trial court erred in permitting the jury to separate, without his consent and over his counsel's objection, after deliberations had begun in the punishment phase of the trial. *Jackson,* 931 S.W.2d at 47. During the punishment deliberations, the trial judge was informed that a juror needed some medical attention at a local hospital. The trial court allowed the juror to go to the hospital after admonishing her not to discuss the case with anyone. The judge then sequestered the remaining eleven jurors after admonishing them to cease deliberations until the juror returned. Approximately one hour later, the juror returned. The State requested and was granted an opportunity to question the juror under oath about her absence. She testified that she had had no discussions with anyone about the case; that she was not exposed to and did not expose herself to any media coverage of the trial; and that she did not deliberate upon a punishment in the case. She rejoined the jury and resumed deliberations until the jury reached a verdict. After the verdict was delivered to the judge and the jury was formally excused, the State requested a

hearing to question the remaining eleven jurors. Each of the remaining jurors testified that they ceased deliberating or discussing appellant's case after being admonished by the trial judge. They testified that they resumed deliberations when the juror returned. The appellate court held that although the trial court committed error in allowing the separation under article 35.23, "the State has shown to our satisfaction the error was harmless beyond a reasonable doubt and did not contribute to the punishment in this case." *Id.* at 49.

The facts in the case at hand are very similar to those in *Jackson:* Willardson was gone for only five or ten minutes, was accompanied by a deputy sheriff, and testified that he did not discuss the case with anyone during his absence. The other eleven jurors testified that they were admonished before Willardson left to cease deliberations during his absence, and that they did so. Applying *Jackson* to the case at hand, we conclude that the record affirmatively shows that the trial court's actions were not harmful. Therefore, we overrule Casias's first four issues.

### Accomplice witness

In his fifth issue, appellant complains that the trial court erred in failing to charge the jury as to the necessity of producing corroboration of accomplice witness testimony. Appellant argues that Aragon and Marco Sanchez were accomplice witnesses as a matter of law. He contends that Aragon was in the same gang, informed appellant and Oscar that Schoeffler was back in town, wanted to fight Schoeffler out of gang loyalty, attempted to assist in the commission of the offense, and was present in the van when the shooting occurred. Appellant also argues that Aragon remained with the group after the shooting through the time the police arrived to question them. Appellant also points out that Aragon was initially arrested and charged with the crime, but was later released after the juvenile court found no probable cause.

Appellant argues that Marco saw Schoeffler in town and told Aragon. Marco was with the group when they stopped at Oscar's house to obtain the gun, and he was in the van with the group during the shooting. Appellant states that Marco was the one that noticed Schoeffler's car parked outside the Shaw residence and tried to accompany appellant and Oscar when they left the van. According to appellant, after the shooting, Marco advised Oscar to wash his hands in order to remove any traces of gun powder. Marco was initially arrested and charged with the offense. At the time of appellant's trial, however, he had not been indicted or otherwise formally charged with a crime.

Appellant's seventh issue complains that the evidence was insufficient to corroborate the testimony of Aragon and Marco, the accomplice witnesses. He argues that if the testimony of Aragon and Marco is excluded, nothing is left to connect appellant to the offense.

■ We will first address the sufficiency of the corroboration testimony under the assumption that both Aragon and Marco were accomplice witnesses as a matter of law. Article 38.14 of the Texas Code of Criminal Procedure provides that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence *tending to connect* the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex.Code Crim.Proc.Ann. art. 38.14 (West 1979) (emphasis added). The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense. *McDuff v. State,* 939 S.W.2d 607, 612 (Tex.Crim.App. 1997). If the State fails to produce any non-accomplice evidence connecting the defendant to the offense, then the defendant is entitled to an acquittal. *Taylor v.*

*State,* 10 S.W.3d 673, 685 (Tex.Crim.App. 2000) (applying legal sufficiency standard dictated by *McDuff*).

■ We eliminate from our consideration the testimony of all witnesses asserted by appellant to be accomplices, and review the following corroborating evidence. Vernon Walker met appellant while they were incarcerated in the Bell County Jail following the shooting of Carmen Shaw. Walker testified that appellant told him he had ordered the hit on "some Blood or white dude." Walker also testified that the appellant told him that Oscar "chickened out" and accidentally shot a woman in Harker Heights at the "dude's" girlfriend's house. Walker was convicted on drug-related charges and had accepted a plea bargain before he came forward with the evidence against appellant; he received nothing from the State in exchange for his testimony.

Detective Tammy Pearson, Harker Heights Police Department, testified that she had investigated a prior shooting in which appellant was the victim. She stated that when she questioned appellant about the shooting and who he thought had shot him, appellant pretended not to know, but said "well, my home boys will take care of it for me."

Joshua Riggs testified that he saw appellant with Oscar on the day of the shooting. Appellant and Oscar drove by the ninth grade center in Oscar's father's green Maxima where Riggs was playing basketball. Riggs testified that as they drove by, they displayed gang signs. Riggs stated that when they turned around and drove past the center again, Oscar stopped the car and appellant rolled down the window and waived what Riggs believed to be a gun. Appellant and Oscar left the center, but drove past again a few minutes later in appellant's white van, the same van Erica was driving when Shaw was killed. Appellant and Oscar displayed gang signs again, and that was the last time Riggs saw them.

We conclude that this corroborating evidence is sufficient to *tend to connect* appellant with the murder of Shaw. Therefore, we overrule appellant's seventh issue. Our holding on appellant's seventh issue renders his fifth issue, complaining that the witnesses were accomplice witnesses as a matter of law, academic. In any event, however, we do not believe that both Aragon and Marco were accomplice witnesses as a matter of law. We overrule appellant's fifth issue.

■ In his sixth issue, appellant complains that he received ineffective assistance of counsel due to his attorney's failure to request a charge on accomplice witness testimony. Because we have concluded that the corroborating evidence was sufficient to tend to connect appellant to the crime and that Aragon and Marco were not both accomplice witnesses as a matter of law, the failure to request a charge on accomplice witness testimony could not constitute ineffective assistance of counsel. We overrule appellant's fifth issue.

### CONCLUSION

Having concluded that appellant was not harmed by the jury separation, that there was sufficient corroborating evidence tending to connect appellant to the crime, and that appellant did not receive ineffective assistance of counsel, we affirm the judgment of the trial court.