Andrew Lafayette Bertram, II v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-018-CR

ANDREW LAFAYETTE BERTRAM, II APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant, Andrew Lafayette Bertram, II, appeals his conviction of capital murder.  In three points, Appellant complains that: 1-2) the trial court erred in overruling Appellant’s motion for an instructed verdict because the evidence was legally and factually insufficient to establish that the murder in this case was committed in the course of committing a robbery; and 3) the trial court erred in denying Appellant’s motion to suppress his written statement because the statement was taken after Appellant had invoked his right to counsel.  We affirm the trial court’s judgment.

FACTS

On July 27
th
, 2000, police officers and paramedics recieved a call from a home where an alleged suicide attempt had occurred.  Upon arriving at the home, officers found Appellant unconscious in a bedroom.  The officers attempted to wake Appellant without success.  The paramedics then arrived at the home and took over the medical assessment of Appellant.  
The paramedics eventually woke Appellant up and found that he had taken several Zantac.  Appellant also had small superficial cuts on his wrists.  During the medical screening of Appellant, Appellant’s sister found an apparent suicide note.  She turned the note over to officers at the scene.  

Appellant had handwritten the suicide note, and it had Appellant’s social security number on it.  In the note, Appellant claimed to have killed Desmond Gibson (Gibson).  Gibson allegedly sold drugs to Appellant.  Gibson’s family had reported him missing a few days before Appellant’s suicide attempt.  The note told police that Appellant had hidden Gibson’s body in a closet at Appellant’s apartment.  The officers radioed another patrol unit to determine whether any truth existed as to Appellant’s claim.  The patrol unit went to Appellant’s apartment, and concerned that a person inside the residence might need medical assistance, searched the apartment without a warrant.  The officers found Gibson’s body in a guestroom closet.  He appeared to have been dead for some time.  

When Gibson’s body was found, police officers at the house arrested Appellant.  After Appellant’s arrest, he gave a number of statements to the police claiming that he had just gone crazy and killed Gibson.  He claimed that he had been addicted to cocaine for a number of years, but had cleaned up for over five months.  He then went out drinking one night, relapsed, and began to purchase large sums of cocaine from Gibson.  Eventually he ran out of money and had nearly lost his job.  He had called Gibson the previous weekend to get more crack.  He acknowledged that he had no money, but wanted to purchase the crack on credit.  Appellant stated that when Gibson arrived at his apartment, he went crazy and killed Gibson shouting, “No more drug dealers.” 

Based on Appellant’s statements, he was charged with capital murder.  While Appellant waited for trial, he gave a number of interviews to local newspapers.  One of the reporters recorded his interview, and the State introduced it at trial.  The State also read Appellant’s written statement to the jury during trial.  The jury found Appellant guilty of capital murder.  Because the State had previously decided not to seek the death penalty, the judge sentenced Appellant to life in prison.  

LEGAL AND FACTUAL SUFFICIENCY

In Appellant’s first and second points on appeal, he claims that the evidence is legally and factually insufficient to support his conviction.  Appellant argues that the evidence at trial only supports a conviction for murder, not capital murder.  Appellant states that the evidence offered at trial does not show that he had formed the intent to rob Gibson before or during the murder.  Because Appellant’s first two points concern the same issues and facts, we will address them together.

LEGAL SUFFICIENCY

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the 
verdict.  
Cardenas v. State, 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 

In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution."  
Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991)
.  

Appellant claims that the evidence must show that he intended to rob Gibson before or during the murder and that without evidence of this intent, the State failed to prove capital murder.  
See Conner v. State
, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (“For murder to qualify as capital murder under section 19.03, the killer's intent to rob must be formed before or at the time of the murder.”).  

The State introduced a number of statements made by Appellant.  Detective Richard Daniel Nutt interviewed Appellant three times after his arrest.  Detective Nutt testified that in the first interview, Appellant stated that, he took Gibson’s crack after he killed him.  In the third interview, Appellant gave a written statement, in which he claimed that between the time that he had relapsed and the murder, he had spent $1,500 on crack cocaine.  Appellant told Detective Nutt that, before the murder, he had run out of money and could think of nothing but the next hit of crack.  He stated that he had to have it.   
Appellant confessed that he stole three $20 pieces of crack and $184 from Gibson after he killed him.  

In a recorded statement to a newspaper journalist, Appellant gave a more detailed confession.  Appellant stated that on the day of the murder he had run out of money and planned on asking Gibson for a loan until payday.  Appellant recounted the murder in the interview, stating that Gibson always turned his back to Appellant when he got the crack out of his pocket.  When Gibson turned his back to get the crack on the day of the murder, Appellant attacked him.  After Gibson died, Appellant used some of the crack that he stole from Gibson.  Once he had taken a hit of cocaine, Appellant then placed Gibson’s body on a blanket and dragged him into the bedroom.  Appellant used more of the crack cocaine before disposing of Gibson’s car.  Appellant stated in the newspaper interview “You know, I mean, I replay in my mind over and over and over and over, you know, I mean, why, why, why, why?  For $184 and $60 worth of cocaine.” 

We hold that a 
rational trier of fact could have found beyond a reasonable doubt that Appellant intended to rob Gibson before or during the murder.
  McDuff
, 939 S.W.2d at 614
.  Therefore, the evidence was legally sufficient to support Appellant’s conviction for capital murder.  We overrule Appellant’s first point on appeal.
 

FACTUAL SUFFICIENCY

We must now determine if the evidence is factually sufficient to support Appellant’s conviction.
  In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis,
 922 S.W.2d at 136.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Appellant claims that the evidence offered to prove that he intended to rob Gibson before or during the murder was factually insufficient.  We apply the evidence we detailed in the legal sufficiency review to determine whether the evidence was factually sufficient.  We must also review any facts that contradict the evidence used in the legal sufficiency review.

Appellant focuses his factual sufficiency argument on the fact that he never confessed to intending to rob Gibson before killing him.  Further, Appellant claims that no direct proof exists to show that Appellant ever formed the intent to rob Gibson before or during the murder.  Appellant claims that the statements he gave to the police showed only that he took the money and crack as an afterthought.  Appellant claims that his motivation for killing Gibson was that he hated him for getting him back on crack cocaine.  To support his position, Appellant points us to the fact that he yelled “No more drug dealers” as he strangled Gibson.  

The evidence also shows, however, that Appellant had run out of money  and felt like he had to have some crack cocaine.  
He called Gibson and asked him to come to his apartment to deliver some crack, which Appellant knew he could not pay for.  He hoped that Gibson would loan him some crack until he could get paid.  When Gibson got to the apartment, he turned his back to Appellant to retrieve some crack cocaine from his pocket.  When Gibson had removed some of the cocaine, Appellant attacked him with a bat.  He hit him two times in the head with the bat.  Only after Appellant rendered Gibson helpless, did he yell out the words “No more drug dealers” and strangle him to death.  Before doing anything else after murdering Gibson, Appellant smoked some of the stolen crack.  Once he smoked some of the crack cocaine, he then hid the body and the evidence of the crime.  Appellant also told the newspaper reporter that he killed Gibson “for $184 and $60 worth of cocaine.”

The jury could have found that Appellant’s actions, lack of funds, desperation for cocaine, and statements made during the newspaper interview showed that his principle reason for killing Gibson was to get the cocaine.  Despite the fact that Appellant never stated that he intended to rob Gibson before murdering him, the jury could infer this intent from Appellant’s actions and words.  
See Conner
, 67 S.W.3d at 197 (“The jury may infer the requisite intent from the conduct of the defendant.”);
 Curtis v. State
, 89 S.W.3d 163, 175 (Tex. App.—Fort Worth 2002, pet. ref’d) (“Intent can be inferred from acts, words, and conduct of the accused.”)
. 
 The proof of guilt is not so obviously weak as to undermine confidence in the 
verdict,
 nor is it greatly outweighed by contrary proof. 
 
Johnson
, 23 S.W.3d at 11.
  In giving due deference to the fact finder’s determinations,
 we hold that the evidence was factually sufficient to support Appellant’s conviction for capital murder.  We overrule Appellant’s second point on appeal.

MOTION TO SUPPRESS

In Appellant’s third point on appeal, he claims that the trial court erred in denying his motion to suppress his written statement because the police took the statement after he had invoked his right to an attorney.  In the hearing on the motion to suppress, Detective Nutt testified about whether Appellant had invoked his right to counsel.  Nutt claimed that, during the first interview, Appellant stated “I think maybe I might want to talk to a lawyer.”  Nutt, thinking that Appellant was tired, ended the interview shortly after this statement, but asked Appellant whether he wanted to continue the interview the following day.  Appellant stated that he did.  The next day, Appellant gave a written statement to Detective Nutt in which he acknowledged that he had the right to counsel but did not want to invoke this right.  Specifically Appellant stated that “I understand that I can speak to an attorney before I give this statement, but I do not wish one to be here.”  Appellant then confessed to Gibson’s murder. 

Appellant claims that he invoked his right to counsel on the night before giving his written statement.  He further states that he did not initiate the meeting that led to him giving a written statement, so the police violated his right to counsel by questioning him after he invoked his right.  Appellant claims that because the police violated his right to see an attorney before questioning, the trial court should have suppressed the statement. 

Without holding that error occurred, we will proceed to a harm analysis.  
See, e.g.,
 Green v. State, 
912 S.W.2d 189, 193 (Tex. Crim. App. 1995) (applying the applicable harm analysis without holding that the trial court erred). 
Exclusionary rules are constitutionally based and a reviewing court must, therefore, apply rule 44.2(a). 
 Hernandez v. State
, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).  Rule 44.2(a) states that in constitutional challenges subject to a harm analysis, “the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.”  T
EX
. R. A
PP
. R. 44.2(a).
  Under rule 44.2(a), an appellate court may affirm the trial court's judgment in the face of constitutional error if (1) concrete evidence exists in the record on which the appellate court can meaningfully gauge or quantify the harm caused by the trial court's error, and (2) the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  
Casias v. State
, 36 S.W.3d 897, 900 (Tex. App.—Austin 2001, no pet.).

The record shows that Appellant’s written statement was cumulative to another verbal statement Appellant gave to a reporter.  The State played the hour long verbal statement to the jury during trial.  The verbal statement was longer in duration and more detailed than the complained of written statement.  We have held that the wrongful admission of cumulative evidence is considered harmless.  
See Franks v. State, 
90 S.W.3d 771, 805-06 (Tex. App.—Fort Worth 2002, no pet.) (holding that because the complained-of testimony was generally cumulative of other evidence introduced in the case, no harm attached)
; 
Mack v. State
, 928 S.W.2d 219, 225 (Tex. App.—Austin 1996, pet. ref'd) (holding error is not reversible “if other evidence at trial is admitted without objection and it proves the same fact or facts that the inadmissible evidence sought to prove”).  

Further, the State provided overwhelming evidence of Appellant’s guilt at trial.  
See Motilla v. State
, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) (holding that “in a harm analysis under Rule 44.2(a), ‘the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error’”).  At trial, the State introduced testimony from Detective Nutt regarding Appellant’s first oral confession.  In that confession, Appellant told Detective Nutt that he took Gibson’s crack after he killed him.  The State also introduced Appellant’s written suicide note taking credit for Gibson’s murder.  The note told police where to find Gibson’s body and that Appellant was sorry for killing Gibson.  
Appellant further granted two oral interviews to journalists, and the State played one of the interviews to the jury.  In that interview, he admitted to the murder and stated his possible motivations for killing Gibson.  Even without Appellant’s written statement, there was an overabundance of evidence proving that Appellant killed Gibson with the intent to rob him.

We hold that the overwhelming evidence of Appellant’s guilt added with the fact that the complained of statement was cumulative to other evidence introduced at trial makes any error harmless beyond a reasonable doubt.  
Casias
, 36 S.W.3d at 900.
  We overrule Appellant’s third point.

CONCLUSION

Having overruled all of Appellant’s points on appeal, we affirm the trial court’s judgment.

SAM J. DAY

JUSTICE

PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  May 8, 2003