# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00605-CR

**Albert Segura, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. D-1-DC-07-100058, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Albert Segura of the offense of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(7)(A) (West Supp. 2009). Punishment was assessed at life imprisonment. In four points of error, Segura asserts that the district court abused its discretion by admitting extraneous offense evidence, submitted an erroneous supplemental instruction to the jury, and erred by allowing the jury to separate during deliberations. We will affirm the judgment.

## BACKGROUND

Segura was charged with murdering two individuals and brought to trial. Evidence considered by the jury, which we will discuss in more detail as it is relevant to Segura's points of error, included the testimony of David Valdez, an alleged accomplice in the murders, and evidence of Segura's alleged criminal history, which was offered, according to the State, to show why Valdez was fearful of Segura and did not report the murders to the authorities.

At the conclusion of the guilt/innocence phase of trial, the district court submitted its charge to the jury. Included in the charge was an accomplice-witness instruction and an instruction that the jury's verdict must be unanimous. During deliberations, the district court received a note from the jury asking, "Must the jury be unanimous in its determination of David Valdez as an accomplice?" Over objection by defense counsel, the district court submitted the following supplemental instruction: "You are instructed that each juror should apply the facts to the law and arrive at an individual verdict. For the jury to arrive at a verdict, each of the 12 individual jurors' verdicts must be the same; either 12 for guilty or 12 for not guilty."

The jury continued deliberating, but was unable to reach a verdict by the end of the day, a Friday. The district court released the jury for the weekend, and deliberations resumed the following Monday morning. That day, the jury found Segura guilty of the offense of capital murder as alleged in the indictment. At the conclusion of the punishment phase of trial, the jury answered "no" to the future-dangerousness special issue, and Segura was subsequently sentenced to life imprisonment without the possibility of parole. This appeal followed.

## ANALYSIS

### Extraneous offense evidence

In his first point of error, Segura asserts that the district court abused its discretion in admitting evidence of other crimes, wrongs, and acts which, according to Segura, "had no relevance apart from character conformity." The State counters that the evidence was admissible to rebut the defensive theory that State witness Valdez was a party to the offense and was not providing truthful testimony regarding his reluctance to contact law enforcement following the murders.

When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse-of-discretion standard. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The trial court does not abuse its discretion unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id*. "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *Id*. (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id*. (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)). A trial court's ruling on extraneous offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id*. at 344 (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)).

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous offense evidence may be admitted. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Further, extraneous offenses are admissible to rebut defensive theories raised by the testimony of a State's witness during cross-examination. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996).

The jury heard evidence that on the night of the murders, Segura and Valdez, who were friends at the time, went to the Austin home of Mario Rivera, where they used drugs and drank alcohol. Other individuals were also present in the house that night, including the murder victims—Rivera's girlfriend, Patty Smith, and her adult son, Billy Ferguson. Rivera testified that during the night, Segura spoke with an individual who accused Rivera of calling Segura a "snitch." After that, Rivera recalled, Segura and Valdez "both took off." According to Rivera, later that night, Segura returned to Rivera's house and confronted Rivera with a firearm. During the confrontation, Rivera explained, Smith came out of the bathroom, Segura turned the gun on her, Ferguson tried to defend his mother, and Segura shot both Rivera and Ferguson. Rivera survived the shooting but Ferguson was killed. Segura then grabbed Smith, ran out of the house with her, and got into a car. The driver of the car was Valdez.

Valdez, who claimed that he was under the impression that Segura had wanted to return to Rivera's house for the sole purpose of using more drugs, testified that he heard several gunshots as he was waiting in the car. Then, Valdez saw Segura exit the house and forcibly drag Smith, who was screaming and crying, to the car. According to Valdez, once Segura and Smith were inside the car, Segura forced him at gunpoint to drive away, first to Segura's father's house in Kyle

(where Smith was tied up) and then to an open field along the frontage road of South IH-35 between Kyle and San Marcos. There, Valdez recalled, Segura pulled Smith by her hair into the field and, approximately five to fifteen minutes later, returned to the car without her.

Later that night, Segura and Valdez drove to a friend's house in San Antonio. The friend drove them to Del Rio, where Segura crossed the border into Mexico. Valdez and the friend returned to San Antonio. Three weeks later, Segura was arrested in Mexico. At around the same time, law enforcement initiated contacted with Valdez, who led them to the field where he and Segura had taken Smith. Officers subsequently found Smith's body in the field. The cause of death, according to the State's medical examiner, was a gunshot wound to the back of the neck.

During Segura's cross-examination of Valdez, defense counsel implied that Valdez had been more extensively involved in the murders than he had claimed and that Valdez had actually been inside the house during the shootings. Counsel also elicited testimony that Valdez "felt very relieved" when Segura crossed the border, that he was encouraged by a friend to "talk to somebody" about "what had happened" but did not, and that, rather than returning to Austin, Valdez got a job in San Antonio and stayed there for approximately 19 days with a friend. Counsel also emphasized that Valdez did not contact law enforcement himself but that it was the police who "came and picked [Valdez] up." Additionally, counsel had established through an earlier witness that the police had detained Valdez at gunpoint when they first encountered him. Thus, counsel attempted to portray the fact that Valdez did not contact the authorities following the murders in a sinister light—Valdez was a party to the murders, counsel had implied through his questioning, and Valdez did not want the extent of his participation to be discovered by the police.

5

During redirect, in a hearing outside the presence of the jury, the State requested permission to introduce evidence suggesting an alternative hypothesis for why Valdez had not contacted the authorities. The State explained,

> The defense has essentially called into question the witness's veracity with respect to why he wouldn't contact law enforcement, and is attempting to make him a party to the offense. I think at that point . . . we get to cover the issue of the amount of duress that he was under and what would go to that level of duress would be his knowledge of the defendant's violent past. . . .
>
> I think based on what they have raised, we're allowed to get into that. Why he doesn't tell—why he's there for 19 days, gets a job in San Antonio but doesn't tell law enforcement, that is a very clear implication of the question.
>
> They ended their cross essentially with an allegation that he was inside the house. I think we get to rebut that with he's not—he didn't contact law enforcement during those 19 days because he's scared of the defendant here. It's what he knows about the defendant that causes him to be scared.

Over defense counsel's objection, the district court allowed the State to introduce evidence that Valdez was afraid of Segura and why. The district court explained its reasoning on the record:

> I would think . . . that a juror would wonder why the witness didn't at several points in time, if they were to believe his testimony, did not, given the opportunity, depart. . . .
>
> And, as the State has said, once the defendant has gone to another country, why would the witness not have come forward? . . .
>
> However, if the witness is suffering from the belief that the defendant is somehow able to retaliate or commit acts against him even when he's not present, that is certainly something that the jurors could consider in ascertaining this witness's credibility. I don't think that would in any way be admitted to show the character of the defendant or whether he acted in conformity, but solely as the explanation of this—who everyone must admit is a pivotal witness, his testimony in this case.

6

The district court agreed, however, to provide a contemporaneous limiting instruction immediately following the presentation of this evidence. The State subsequently elicited the following testimony from Valdez:

> Q: Mr. Valdez, did AJ [Segura] tell you things about himself that caused you to fear him?
>
> A: Yes, sir, he did.
>
> Q: What things did AJ tell you about himself that caused you to fear him?
>
> A: That he had been to prison a couple of times; that he was a member of the Texas Syndicate.
>
> Q: What did you understand the Texas Syndicate to be?
>
> A: A prison gang, as well as with connections to the outside.
>
> Q: And what else did he tell you?
>
> A: He ran dope for the cartels; he ran pounds of meth; he ran pounds of cocaine—kilos of cocaine, I'm sorry; pounds of marihuana to all the big cities in the state of Texas, El Paso, San Antonio, Dallas, Houston.
>
> Q: What concern did that cause you?
>
> A: A lot of concern. He had mentioned how he had connections throughout—you know, that nobody was untouchable and he could make a phone call and he could have things handled.

Immediately following this testimony, the district court provided the following limiting instruction:

> I will just instruct the jurors that the statements just made by the witness were not admitted to prove the character of the defendant or show any actions that he may have taken that would be in conformity. They were just admitted to establish, if it does, the basis for the witness's fears, if any, of the defendant.

7

We cannot conclude on this record that the district court abused its discretion in admitting the above evidence. The evidence was admissible, the district court could have found, to rebut the defensive theory that Valdez was not providing truthful testimony concerning the extent of his involvement in the offense and why he did not inform law enforcement of the murders. The district court could have found that this was a material, non-propensity issue in the case. Additionally, the district court would not have abused its discretion in finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. The district court could have found that Valdez was a pivotal witness in the case and, therefore, that the probative value of evidence bearing on the jury's determination of Valdez's credibility and veracity was high. At the same time, the district court could have found that the extraneous offense evidence, involving Segura's membership in a prison gang and past drug activity but not mentioning past instances of actual violence, was not so prejudicial that it substantially outweighed the probative value of the evidence. Given the importance of Valdez's testimony to both the State and the defense, we cannot conclude that the district court's decision was outside the zone of reasonable disagreement.

Moreover, given the other evidence in the case, including the testimony of Rivera, the eyewitness and victim who survived the shooting, and the district court's limiting instruction regarding the evidence, we cannot conclude on this record that the admission of the evidence, even if erroneous, harmed Segura. *See* Tex. R. App. P. 44.2(b) (providing that non-constitutional error that does not affect substantial rights must be disregarded); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) ("A substantial right is affected when the error had a substantial and

8

injurious effect or influence in determining the jury's verdict."); *Vega v. State*, 255 S.W.3d 87, 105 (Tex. App.—Corpus Christi 2007, pet. ref'd) (holding that, even if trial court erred in admitting extraneous offense evidence, "any error was harmless because the [limiting] instruction, which we presume the jury followed, identified material issues for which the evidence could be considered under rule 404(b)").

We overrule Segura's first point of error.

## Supplemental instruction

In his second and third points of error, Segura contends that the district court's supplemental instruction authorized the jury to return a less than unanimous verdict and to "ignore the previously given accomplice-witness instruction." The State responds that the instruction did not authorize a non-unanimous verdict on any element of the offense and that it did not nullify the accomplice-witness instruction. Alternatively, the State argues that any error in the supplemental instruction was harmless.

We review claims of jury charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g). *See Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd) (citing *Almanza*, 686 S.W.2d at 171). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen*, 270 S.W.3d at 808. If error is found, the standard for reversal depends on whether a timely objection was made in the trial court. *Almanza*, 686 S.W.2d at 171. If the error was the subject of a timely objection, reversal is required upon a showing of "some harm." *Id*. If no proper objection was made at trial, reversal is only proper in the presence of egregious harm. *Id*.

9

The trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). The purpose of the jury charge is to inform the jury of the applicable law and guide the jury in its application to the case. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). The jury charge must allow the jury to determine the defendant's guilt in light of the evidence and the law. *Id*. Absent evidence to the contrary, we presume the jury followed the law provided by the charge. *Id*.

In this case, the district court's charge included an accomplice-witness instruction regarding State witness David Valdez. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). The jury was also instructed that its verdict "must be unanimous." During deliberations, the district court received a note from the jury asking, "Must the jury be unanimous in its determination of David Valdez as an accomplice?" The district court proposed the following answer: "You are instructed that each juror should apply the facts to the law and arrive at an individual verdict. For the jury to arrive at a verdict, each of the 12 individual jurors' verdicts must be the same; either 12 for guilty or 12 for not guilty." Defense counsel objected, requesting instead that the jury be instructed that "the law necessary to arrive at their decision is contained within the original charge given to the jury. They should reread that charge and continue to deliberate, if possible—or continue to deliberate." The district court overruled the objection and sent its response back to the jury.

We find no error in the district court's response. "When the trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction." *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim.

10

App. 1993).  Thus, in determining whether the subject matter of the communication was proper, we look to the same rules governing the court's charge.  *See id*.  "If an instruction may properly be given in the original charge, it may be given as an additional instruction."  *Allaben v. State*, 418 S.W.2d 517, 521 (Tex. Crim. App. 1967).  Here, the district court's supplemental instruction was a correct statement of the law that could have been given in the original charge.  Each juror is required to apply the facts to the law and arrive at an individual verdict, but, for the jury to arrive at a verdict, each of the 12 individual jurors must reach the same verdict—either guilty or not guilty.  *See* Tex. Code Crim. Proc. Ann. art. 37.05 (West 2006) (providing that, when jury is polled, each juror must be asked whether verdict is his or her own); *see also Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006) ("The principal justification for the unanimity requirement is that it ensures that *each juror* is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense."  (Emphasis added) (quoting *State v. Johnson*, 627 N.W.2d 455, 459 (Wis. 2001))); *Ngo*, 175 S.W.3d at 745 ("Unanimity . . . means that *each and every juror* agrees that the defendant committed the same, single, specific criminal act."  (Emphasis added)).

We also disagree with Segura's contention that the supplemental instruction given to the jury "instructed them that they were not unanimously bound by the accomplice witness rule as contained within article 38.14 [of the code of criminal procedure] and the original charge."  We find nothing in the supplemental instruction that would lead the jury to believe that it was not bound by the accomplice-witness instruction provided in the original charge.  Moreover, we are aware of no authority, and Segura cites to no authority, that requires jury unanimity with respect to whether a given witness is an accomplice.  To the contrary, it is well settled that the facts a jury must

11

unanimously agree on are the facts that constitute the essential elements of the offense. *See Richardson v. United States*, 526 U.S. 813, 817 (1999); *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007); *see also Webb v. State*, No. 01-94-01081-CR, 1995 Tex. App. LEXIS 3087, *13 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (not designated for publication) ("Contrary to appellant's claim, the law and the court's charge do not require that the jury unanimously determine whether [the witness] was an accomplice to the murder."). In this case, Valdez's status as an accomplice is not such a fact. One juror could find that Valdez was an accomplice but that his testimony was sufficiently corroborated by other evidence, while another juror could find that Valdez was not an accomplice and that his testimony did not need to be corroborated. Either way, despite their disagreement as to Valdez's status as an accomplice, both jurors could find Segura guilty of the charged offense.

We overrule Segura's second and third points of error.

**Jury deliberations**

Prior to trial, Segura filed a motion to sequester the jurors. *See* Tex. Code Crim. Proc. Ann. art. 35.23 (West 2006). The district court granted the motion. However, after the jury was unable to reach a verdict by the end of the day on a Friday, the jury requested to be released for the weekend, and the district court granted the request. In his fourth point of error, Segura asserts that the district court reversibly erred by doing so. We disagree.

The error in failing to sequester a jury is a statutory violation that must be disregarded unless it affected Segura's substantial rights. *See Casias v. State*, 36 S.W.3d 897, 900 (Tex. App.—Austin 2001, no pet.) (citing Tex. R. App. P. 44.2(b)). A substantial right is affected

when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271. Here, prior to releasing the jury, the district court instructed the jury as follows:

> I would just ask again that you please follow very carefully all the instructions we have given you, especially the ones . . . about not discussing the case with anyone whomsoever, nor should you watch any accounts on television, listen to any accounts on the radio, or read any accounts in any publications. And, furthermore, if you would please not engage in any type of computer research or any social networking pertaining to this case.
>
> And we just ask that if you would all be so kind as to return to the jury room at 9:00 [Monday] morning, and continue your deliberations.
>
> I would also ask that you please not commence your deliberations until after all 12 of you are assembled in the jury room.

There is no indication in the record that the jury disregarded the district court's instructions or that the jury separating had a substantial and injurious effect or influence in determining the jury's verdict. Thus, we cannot conclude that Segura was harmed. *See Campbell v. State*, 189 S.W.3d 822, 826 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

We overrule Segura's fourth point of error.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 13, 2010

Do Not Publish

14