

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-358-CR

STEPHEN RAY SMITH                                                 APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION ON REHEARING[1]

------------

After reconsidering our opinion on appellant's motion for rehearing, we deny the motion, but withdraw our opinion and judgment dated December 18, 2008, and substitute the following to clarify some of the facts.

### Introduction

Appellant Stephen Ray Smith appeals his conviction for theft of property with a value between $100,000 and $200,000. *See* Tex. Penal Code Ann.

---

[1] *See* Tex. R. App. P. 47.4.

§ 31.03(e)(6) (Vernon Supp. 2008). In two points, appellant contends that the trial court erred by failing to include an accomplice witness instruction in the jury charge and that he received ineffective assistance from his trial counsel because his counsel failed to request such an instruction. We affirm.

### Background Facts

On December 26, 2004, Alton Kiser received a call informing him that his travel trailer had been stolen.[2] Less than a month later, Woody Vannatta, an employee of Flowers Construction Company (located in Temple, Texas), arrived at work to find that two trucks, a flatbed trailer, a generator, and various tools and equipment were missing. Company employees called the police to notify them of the suspected theft of these items.[3] On the morning of February 3, 2005, Barbie Don Bramlett, owner of Bramlett Implement Company (a John Deere dealership), received a call from an employee about a break-in at his business. When Bramlett arrived at the business, he discovered that the locks on his gates had been cut. He then noticed that a long trailer, a black pickup

---

[2] Kiser filed a police report, and more than a month later, he received a call that the travel trailer had been found. When Kiser identified the trailer, he noticed that its siding had been torn and its electrical connections had been severed.

[3] Eventually, Tory Vannatta (another employee) received a call informing him that the trucks and some of the other equipment had been recovered.

2

truck, a customized generator, a four-wheeler vehicle, and two John Deere Gator (Gator) utility vehicles had been stolen.

Two days later, Hood County Sheriff's Office Sergeant Steve Smith was flagged down by Clinton Sullivan and Jackie Mitchell, who had noticed Bramlett's abandoned black truck in front of a shop Mitchell owned. After Sergeant Smith saw that decals had been ground off of the truck, he confirmed that the truck had been stolen.[4] Sullivan then told Sergeant Smith that he had seen the same black truck along with a Gator at his neighbor's house and that he had seen a heavy-set white man riding on the Gator.

Sergeant Smith and other officers went to the location described by Sullivan to investigate. Upon arriving, Sergeant Smith noticed a Gator and several other vehicles at the property, along with flooring, insulation, hauling trailers, and a large amount of construction tools and materials. Appellant was outside working on an old house trailer when they arrived.[5] Appellant allowed Sergeant Smith to examine the Gator, and Sergeant Smith confirmed that it was one of the Gators that had been stolen from Bramlett. Appellant told

---

[4] Bramlett received a call that the pickup truck had been found and went with members of the Hood County Sheriff's Department to identify the truck. He acknowledged that the truck belonged to his business.

[5] The house trailer appeared to be unlivable, and appellant seemed to have been remodeling it.

Sergeant Smith that he was a part owner of the real property where the stolen items were located.

A man named Scott Elmore then left a travel trailer, and both he and appellant refused to give the officers consent to further search the trailer or the surrounding property. Upon obtaining a search warrant, Sergeant Smith searched the travel trailer and found the keys to Bramlett's black truck, marijuana, syringes, and a gun (which had also been reported stolen).

In September 2005, appellant was indicted for theft. The indictment alleged that appellant participated in a continuing course of conduct that was intended to deprive Kiser, Vannatta, and Bramlett of more than $100,000 worth of various items of property, including three pickup trucks, two Gators, two generators, and three trailers.[6] The indictment also contained an enhancement paragraph alleging that appellant had been previously convicted

---

[6] Section 31.09 of the penal code states that when "amounts are obtained . . . pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense." Tex. Penal Code Ann. § 31.09 (Vernon 2003).

4

of a felony drug offense.[7]  Appellant went to trial before a jury in May 2006. Following voir dire, appellant pled not guilty.

At trial, Scott Elmore (who had several prior felony convictions) testified that he had known appellant since 2004, that he received money and methamphetamine from appellant, and that he had joined together with appellant to purchase the real property where the various items of stolen property were found.[8]  Elmore admitted that he stole property from Bramlett Implements and from Flowers Construction Company and testified that appellant had the right to use the stolen property if he desired, that appellant encouraged him or aided him in stealing the property, that appellant purchased most of the stolen property,[9] and that he bought marijuana with money that appellant gave him in exchange for the property.

---

[7] Though theft of property valued between $100,000 and $200,000 is a second degree felony, the enhancement paragraph enabled the State to seek punishment for a first degree offense. *See* Tex. Penal Code Ann. §§ 12.42(b), 31.03(e)(6) (Vernon Supp. 2008).  Appellant pled true to the enhancement paragraph's allegation, and evidence admitted at trial further established that the allegation was true.

[8] Appellant testified that he purchased the property with Elmore to store old cars which he had collected.

[9] Specifically, Elmore testified that appellant bought three trailers and a four wheeler vehicle that Elmore had stolen and that appellant knew that these items were stolen when he bought them.

5

After other witnesses testified and counsel concluded their closing arguments, the trial court submitted a charge to the jury on the theft offense. The charge defined theft, generally informed the jury about criminal responsibility, and specifically instructed the jury that if it found that appellant, either acting alone or with Elmore, participated in a scheme of conduct that intended to deprive the owners of their property, then it was required to convict him. However, the charge did not contain any instruction related to accomplice witnesses or the evidentiary effect of Elmore's testimony, and appellant did not request any such instruction or object to its omission. The jury found appellant guilty, found that the enhancement paragraph in the indictment was true, and assessed punishment at ninety-nine years' confinement and a $10,000 fine. Appellant filed this appeal.

**Accomplice Witness Instruction**

In his first point, appellant asserts that the trial court erred by failing to include an instruction in the jury charge regarding accomplice witness testimony. The State concedes and we hold that Elmore was an accomplice as a matter of law and that the trial court erred by not including such an instruction.[10] *See Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App.

---

[10] At the time of appellant's trial, Elmore was in custody and was awaiting trial on the same charges as those contained in appellant's indictment.

6

2006), *cert. denied*, 127 S. Ct. 1832 (2007). However, because appellant admits that he made no request to the trial court that an accomplice witness instruction be included in the jury's charge, he must demonstrate that he suffered egregious harm from the instruction's omission. *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). In other words, appellant must show that any corroborating evidence not linked to an accomplice's testimony is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Id.* (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)); *see also Jones v. State*, 195 S.W.3d 279, 289 (Tex. App.—Fort Worth 2006), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007) (explaining that if "the evidence clearly warrants conviction independent of the accomplice testimony, the trial court's failure to instruct on the law of accomplice testimony is not reversible error").

A conviction "cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). In order to be an accomplice, the person must be susceptible to prosecution for the offense with which the accused is charged or a lesser

included offense. *See Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000).

When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Malone*, 253 S.W.3d at 257; *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). Rather, the evidence must simply link the accused in some way to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Malone*, 253 S.W.3d at 257 (quoting *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)). "Independent evidence which generally tends to prove that an accomplice witness's version of events

8

is true, rather than the version given by the defendant, is considered corroborative, even if it concerns a mere 'detail,' as opposed to a substantive link between the defendant and commission of the offense." *Beathard v. State*, 767 S.W.2d 423, 430 (Tex. Crim. App. 1989); *see also Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993) (noting that "[a]pparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration").

The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Cathey,* 992 S.W.2d at 462–63. The "tends to connect" standard does not present a high threshold, and we must apply the standard by viewing corroborating evidence in the light most favorable to the verdict. *See Simmons v. State*, 205 S.W.3d 65, 73 (Tex. App.—Fort Worth 2006, no pet.); *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.).

Here, appellant contends that he suffered egregious harm because he asserts that absent Elmore's testimony, no evidence links appellant to the theft scheme. The State argues that appellant did not suffer egregious harm because Elmore's testimony was sufficiently corroborated by other evidence.

We conclude that the record contains sufficient evidence apart from accomplice testimony that tends to connect appellant to the theft scheme charged in the indictment.[11] First, appellant jointly owned the real property where the various items of stolen property were found and stayed overnight at the property on a few occasions. Upon approaching the property to investigate, Sergeant Smith found appellant on the property near the location of some of the stolen tools.

Next, Clinton Sullivan, who lived near the real property where the stolen items were found, testified that he saw appellant riding on one of the stolen Gators. More importantly, Sullivan stated that he saw appellant "grinding" Bramlett's stolen black truck, which he later found abandoned at Mitchell's shop, and also saw appellant "cutting up" other cars. Sullivan correctly identified appellant from a photo lineup as being the man he had seen grinding the truck.[12] Sergeant Smith testified that when he first saw the truck at

---

[11] The record established that another witness at appellant's trial, Lisa Diane Atkins, may also have been connected to the theft scheme. Atkins, a confessed thief of over two hundred cars, testified that she had previously sold stolen property to appellant and that she had received drugs from appellant in exchange for such property. Therefore, we will not consider the testimony of Atkins (or Elmore) in determining whether sufficient corroborating testimony was presented. *See Solomon*, 49 S.W.3d at 361.

[12] At oral argument, appellant's counsel argued that Sullivan's testimony regarding appellant's "grinding" on the truck was not credible because Sullivan

10

Mitchell's shop, he "noticed that on the passenger side of the tailgate that paint had been ground down by what appeared to be an electric grinder . . . removing some decals from the side of the vehicle." Bramlett also confirmed that the truck's decals, which identified his company and provided its phone numbers, had been ground off.[13]

Appellant's communications with two of the witnesses who testified at trial demonstrated consciousness of his guilt and further connected him to the theft scheme. For instance, Carol Schott, who sold the real property that appellant and Elmore jointly purchased (as evidenced by a real estate contract that appellant signed in January 2005), testified that she received a letter from appellant asking her to contact law enforcement and tell them that he had not taken any part in purchasing the property. Schott understood that this letter asked her to lie for appellant. Finally, Susan Elmore (Scott's mother) testified that after Scott had been arrested for theft, appellant called her and told her

_____

stated that he saw the incident at about 11:30 p.m. However, we must view this evidence in the light most favorable to the verdict, and we must defer to the jury's resolution of the witness's credibility. *See Simmons*, 205 S.W.3d at 72–73; *Clement v. State*, 248 S.W.3d 791, 797 (Tex. App.—Fort Worth 2008, no pet.).

[13] The record indicates that the truck may have been left at Mitchell's shop because it was stuck in the mud.

11

that if Scott would "take the fall" for the theft charges, appellant could "help him with money" after he was released from jail.

We hold that these facts, considered cumulatively, sufficiently corroborated the accomplice testimony by tending to connect appellant to the theft scheme; therefore, no egregious harm resulted from the lack of an instruction about accomplice witness testimony.[14] *See Solomon*, 49 S.W.3d at 361; *Cathey*, 992 S.W.2d at 462 (explaining that if "the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of Article 38.14 has been fulfilled"). We therefore overrule appellant's first point.[15]

**Ineffective Assistance of Counsel**

---

[14] We note that appellant's criminal intent in purchasing the real property, riding on the Gator, grinding off the decals, and making these communications may be properly inferred by supplementing Elmore's testimony (which more directly implicated appellant in the scheme). In a theft case, the actor's knowledge or intent may be established by the uncorroborated testimony of an accomplice. Tex. Penal Code Ann. § 31.03(c)(2); *see Nethery v. State*, 29 S.W.3d 178, 185–86 (Tex. App.—Dallas 2000, pet. ref'd).

[15] Within the portion of appellant's brief related to his first point, he included subheadings and a brief analysis regarding legal and factual sufficiency. However, because this analysis seems to repeat the allegations appellant included regarding the lack of corroborating evidence, and because the analysis contains no citation to authorities, we will not address legal or factual sufficiency as independent grounds for this appeal. *See Dornbusch v. State*, 262 S.W.3d 432, 438 n.3 (Tex. App.—Fort Worth 2008, no pet.).

12

In his second point, appellant argues that his trial counsel gave him ineffective assistance by failing to request an accomplice witness instruction. To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

In this case, appellant's ineffective assistance claim is wholly predicated on his counsel's failure to request an accomplice witness instruction. Even if we were to assume that appellant's counsel's performance was legally deficient,[16] because we have concluded that, despite no instruction being given, the accomplice testimony was sufficiently corroborated by other evidence that tended to connect appellant to the theft scheme, appellant cannot demonstrate that the result of his trial would have been different. *See Johnson v. State*, 234 S.W.3d 43, 56 (Tex. App.—El Paso 2007, no pet.) (reasoning that because the "non-accomplice evidence sufficiently corroborated the accomplice and tended to connect [the defendant] to the offense . . ., the record [did] not establish a reasonable probability that but for counsel's error, the result of the proceeding would have been different"); *Casias v. State*, 36 S.W.3d 897, 902 (Tex. App.—Austin 2001, no pet.) (overruling an ineffective assistance argument because the corroborating evidence was sufficient to tend to connect the defendant to the crime). Therefore, we overrule appellant's second point.

---

[16] Courts have noted that failure to request an accomplice witness instruction may render counsel's performance deficient. *See Ex parte Zepeda*, 819 S.W.2d 874, 876–77 (Tex. Crim. App. 1991); *Robinson v. State*, 665 S.W.2d 826, 831 (Tex. App.—Austin 1984, pet. ref'd) (describing counsel's failure to request an accomplice witness instruction as a "glaring error").

**Conclusion**

Having overruled both of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE


PANEL:  CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 29, 2009