Jose R. SANCHEZ, Appellant,

v.

The STATE of Texas, State.

No. 2–94–117–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 25, 1995.

Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, and Betty Marshall, Assistant, Fort Worth, for appellee.

Before DAY, RICHARDS and DAUPHINOT, JJ.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

RICHARDS, Justice.

In accordance with Rule 101 of the Texas Rules of Appellate Procedure, a majority of the justices who participated in the original opinion and the opinion on motion for rehearing in this case hereby withdraw our opinion and judgment of June 8, 1995, reconsider and modify same, and substitute the following:

Jose R. Sanchez appeals his conviction for aggravated possession with the intent to deliver cocaine. TEX.HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 1992). A jury convicted Sanchez, assessed punishment of twenty years' confinement with a $10,000 fine, and made an affirmative deadly weapon finding. We reverse Sanchez's conviction and sentence and remand the case for a new trial.

The police executed a search warrant of Sanchez's house and found a set of triple beam scales and a shoe box containing four bags of cocaine, chrome scales, Ziploc bags, and papers. Also found were ledgers used to track narcotics transactions. One of the ledgers had Sanchez's name and phone number on it. The police also found several guns in Sanchez's house during the search.

### JURY SEPARATION

In point of error one, Sanchez asserts the trial court erred in permitting the jurors to separate, over his objection, after the trial court read the charge to the jury at the guilt/innocence stage of the trial. We agree.

Article 35.23 of the Texas Code of Criminal Procedure states, in pertinent part:

> The court on its own motion may and *on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate,* after which the jury shall be kept together, and not permitted to separate except to the extent of housing female jurors separate and apart from male jurors, until a verdict

has been rendered or the jury finally discharged.

TEX.CODE CRIM.PROC.ANN. art. 35.23 (Vernon Supp.1995) (emphasis added). This 1989 amended version of article 35.23 no longer forbids separation of jurors after the court reads the charge.[1] *Krueger v. State,* 843 S.W.2d 726, 728 (Tex.App.—Austin 1992, pet. ref'd). Instead, it allows separation unless the court or a party makes a motion to sequester the jury or a party timely objects to a request to separate. *See id.; Keiser v. State,* 880 S.W.2d 222, 223 (Tex.App.—Austin 1994, pet. ref'd); *Hood v. State,* 828 S.W.2d 87, 92 (Tex.App.—Austin 1992, no pet.). Therefore, the defendant must either timely file a motion to sequester or timely object to a request to separate to preserve for appeal a complaint that the trial court deprived the defendant of the right to have the jury sequestered. *Id.; see also* TEX.R.APP.P. 52(a).

■ *Keiser* defines a timely request as one "that is made before jury deliberations begin or before the jury asks to separate." *Keiser,* 880 S.W.2d at 223.[2] *Cf. Hood,* 828 S.W.2d at 91–97.[3] We believe, however, that a timely objection to a request to separate is one made at the earliest possible opportunity. *See Gregg v. State,* 881 S.W.2d 946, 950 (Tex. App.—Corpus Christi 1994, pet. ref'd);[4] *Hood,* 828 S.W.2d at 91–96. Therefore, the trial court would commit error under the mandatory language of article 35.23 by allowing separation if Sanchez either made a timely motion to sequester or timely objected to the request to separate. *See Hood,* 828 S.W.2d at 93.

Here, the jury requested a lunch break during deliberations. The following then transpired:

THE COURT: Let the record reflect the jury has asked to take a lunch break. There has been no motion filed on behalf of the defendant that the jury stay together. And so, I'm going to allow them to separate for lunch.

[DEFENSE COUNSEL]: And we would object. We would contend that unless all the parties agree that they can separate that by law they're required to remain together during deliberations.

THE COURT: I'll overrule that objection and let them separate.

■ While defense counsel's objection incorrectly states the law under the 1989 amendment to article 35.23, his objection clearly informed both the court and the State that he opposed the separation of the jury.[5] Because this was the first time the jury separation issue occurred in this trial, we hold that defense counsel timely objected to the request to separate. Sanchez thus invoked his right to stop the separation of the jury under article 35.23 of the Texas Code of Criminal Procedure. *See Hood,* 828 S.W.2d at 93. Accordingly, the trial court erred by

---

1. Under the pre–1989 version of article 35.23, the jury could not separate after the reading of the court's charge unless the defendant consented to the separation. *Harris v. State,* 738 S.W.2d 207, 211 (Tex.Crim.App.1986).

2. In *Keiser,* the jury separated during deliberations. The defendant failed to object at the time of separation, and instead, waited until the time for sentencing before objecting. The Austin Court of Appeals held the defendant failed to preserve his complaint for review. *Keiser,* 880 S.W.2d at 223.

3. In *Hood,* the jury asked to go home during jury deliberations. The defense counsel presented a motion to stop the jury from separating and also voiced an objection to the jury separating. The court overruled the objection and allowed the jury to separate. The Austin Court of Appeals held the language of article 35.23 required the trial judge in this case to not allow the jury to separate, and his allowing of separation consti-

tuted reversible error. *Hood,* 828 S.W.2d at 93–96.

4. In *Gregg,* a juror became ill after jury deliberations had begun. The court asked both counsel if they agreed to let the jury separate and neither objected. The Corpus Christi Court of Appeals held this was the earliest possible opportunity to object or present a motion to sequester. *Gregg,* 881 S.W.2d at 950.

5. The State insists Sanchez waived this point of error since his objection at trial did not comport with his point of error. Sanchez's objection at trial, however, clearly informed both the trial court and the State that he objected to the jurors separating. *See Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992). Sanchez's point of error asserted that the trial court erred in allowing the jury to separate after he objected to the jury separating. Therefore, we do not agree that Sanchez' trial objection does not comport with the point of error presented on appeal.

allowing the separation after Sanchez's timely objection. *Id.*

## HARM ANALYSIS

■ Because the trial court erred in allowing the separation, we must now address the question of harm. Rule 81(b)(2) of the Texas Rules of Appellate Procedure requires that in all cases in which error is found, an appellate court shall reverse the judgment under review unless it determines, beyond a reasonable doubt, the error made no contribution to the conviction or to the punishment.

Under this rule, once the defendant on appeal has convinced the appellate court that an error has occurred, the appellate court must undertake a harmless error analysis. The "burden of proof" as to the issue of lack of harm then belongs to the State, not the appellant. *See Williams v. State,* 851 S.W.2d 282, 285 (Tex.Crim.App.1993); *see also Hughes v. State,* 878 S.W.2d 142, 160 (Tex. Crim.App.1992); *see also Barnes v. State,* 876 S.W.2d 316, 330, n. 17 (Tex.Crim.App. 1994).

In examining this issue, we find *Hood* is the only case in which an appellate court has considered the application of Rule 81(b)(2) to the 1989 amended version of article 35.23.[6] According to *Hood:*

> We conclude that the type of error presented in violation of the mandatory provision of article 35.23 in the instant case is not an error subject to harm analysis under Rule 81(b)(2). The error cannot be subjected to a harm analysis in any meaningful manner because this record does not reveal any concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error. This does not mean that every violation of article 35.23 is to be excluded from a harm analysis under Rule 81(b)(2). Our holding is limited to the violation of article 35.23 as shown by the particular facts and circumstances of the instant case.

*Hood,* 828 S.W.2d at 96 (citations omitted).

■ We do not believe that *Hood* stands for the proposition that an appellate court

does not apply Rule 81(b)(2) to a violation of the mandatory provision of article 35.23. Instead, we believe it means that an appellate court cannot affirm a conviction under Rule 81(b)(2) after a trial court errs by allowing a separation under article 35.23 unless concrete evidence exists in the record on which the appellate court could meaningfully gauge or quantify the harm caused by the trial court allowing the separation. Here, the record contains no evidence under which we can quantify or gauge the harm caused by the separation. Accordingly, we cannot declare the error harmless under the Rule 81(b)(2) standard. *See Hood,* 828 S.W.2d at 96.

■ Recognizing the difficulty of applying Rule 81(b)(2) in a situation where jury separation error has been found, the State contends the appropriate remedy in this case is not reversal and a remand for new trial, but rather a remand to the trial court with directions that a hearing be held on the issue of harm. Two cases are cited by the State in support of its request: *McIlveen v. State,* 559 S.W.2d 815 (Tex.Crim.App.1978); and *Green v. State,* 510 S.W.2d 919 (Tex.Crim.App. 1974). The State suggests an evidentiary hearing on remand is required and cites both cases for the proposition that the State must be given an opportunity to rebut any presumption of harm from improper jury sequestration. We believe the State is mistaken.

In *McIlveen* the defendant complained on appeal of several instances of jury separation occurring during his trial. The appellate record, however, showed that not only was there no objection in the trial court to the jury separations, the record showed that in two of the three instances defense counsel actually acquiesced to the separations. The first indication the defendant in *McIlveen* was unhappy with the separations occurred when he filed his motion for new trial. Even there, the motion for new trial addressed only two of the three instances where separation occurred. In a footnote of its opinion, the court of criminal appeals noted:

---

**6.** Cases construing the old version of article 35.23 before the enactment of Rule 81(b) held that a violation of article 35.23 raises a presump-

tion of harm that the State must then seek to rebut. *Reed v. State,* 595 S.W.2d 856, 857 (Tex. Crim.App. [Panel Op.] 1980).

The record reflects specifically that he did not make [the third instance of separation] a part of his motion for new trial. To be a valid ground of error in this Court, the separation needs to be alleged in the motion for new trial so the State may have the opportunity to rebut the presumption of harm. *Green v. State,* 510 S.W.2d 919, Tex.Cr.App. **If appellant does seek to present such error here for the first time, it has not been properly preserved and will not be considered.**

*McIlveen,* 559 S.W.2d at 818 n. 1 (emphasis added).

This is not the situation in our case. Here, defense counsel specifically objected to the jury separation at the time the trial judge announced his intention to allow the jurors to separate for lunch. Because he properly objected in the trial court, counsel was under no obligation to reurge the error in a motion for new trial. *See* TEX.R.APP.P. 30 (except to adduce facts of a matter not otherwise shown on the record, a motion for new trial is not a requisite to presenting a point of error on appeal).

*Green v. State,* 510 S.W.2d 919, 922 (Tex. Crim.App.1974), is similarly distinguished. In *Green* the defendant did not object at trial to the one alleged instance of jury separation he contended occurred in that case. The court of criminal appeals first noted the defendant's assertion that the jury was allowed to separate over his counsel's objection was "utterly without foundation in the record." *Id.* at 921. Thereafter, the court held:

Here, appellant having raised the contention [of separation] for the first time on appeal, even if there was no consent, the State was denied even the opportunity of showing any erroneous separation was harmless. . . . The clear implication of this holding is that an incomplete, undeveloped, or silent record is not sufficient for this Court to conclude that consent [for separation] was not given. The burden is on the appellant to show he was denied a fair trial, not on the State to show he was

accorded a perfect trial. No reversible error is shown.

*Id.* at 922.

In the instant case, it is undisputed defense counsel voiced a specific objection to jury separation immediately after learning the trial court, in response to a jury note requesting a lunch break, intended to permit separation. This alone distinguishes *McIlveen* and *Green.* In addition, we note that to the extent that *Green,* a pre-rules case, places the burden of showing harm on the appellant, Rule 81(b)(2) now requires reversal unless the error can be held harmless beyond a reasonable doubt.

We sustain point of error one.

## USE OR EXHIBITION OF A DEADLY WEAPON

In point of error two, Sanchez asserts the evidence was insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense. Sanchez argues in his motion for rehearing that this court must rule on his insufficiency argument in order to avoid double jeopardy.[7] While we find no cases directly addressing this issue, similar cases involving enhancing punishment by proving the defendant is an habitual offender hold that if insufficient evidence exists to prove a defendant is an habitual offender in the punishment phase of a trial, but the appellate court remands the case for a new trial, the State cannot have another "bite at the apple" to prove the defendant was an habitual criminal. *See Ex parte Sewell,* 742 S.W.2d 393, 395 (Tex.Crim.App.1987); *Carter v. State,* 676 S.W.2d 353, 354–55 (Tex.Crim.App.1984). In fact, the Texas Court of Criminal Appeals held:

Although proof of prior convictions is not necessary to sustain a conviction for the primary case, the result of their proof is to increase in almost every case the sentence pronounced. If the enhancement portions of the indictment were part of a completely separate proceeding . . . the State would not be allowed a second chance at proof. Accordingly, we do not see why there

---

7. The State did not file a response to Sanchez' motion for rehearing.

should be a different constitutional standard when the proceeding is in conjunction with the trial in guilt/innocence. The result is the same: applicant's sentence is increased by proof of a fact, just like applicant's conviction was obtained to begin with, by proof of facts. Due process mandates a compliance with double jeopardy principles when a person is incarcerated. If the sentence is subject to increase, we believe due process mandates that the procedures used comply with those same constitutional principles.

*Ex parte Quirke*, 710 S.W.2d 582, 584–85 (Tex.Crim.App.1986). Accordingly, the State would be precluded from relitigating an issue of fact in a second punishment hearing if it failed to prove that issue in the first punishment hearing. *See Quirke*, 710 S.W.2d at 584; *Carter*, 676 S.W.2d at 355; *Ex parte Augusta*, 639 S.W.2d 481, 485 (Tex.Crim.App. 1982) (en banc); *Cooper v. State*, 631 S.W.2d 508, 513 (Tex.Crim.App.1982) (en banc).

Based on the rationale underlying these cases, we believe we must consider the sufficiency complaint presented by Sanchez.

 In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *See Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App. 1984); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984) (op. on reh'g). The phrase "used during the commission of a felony offense" refers not only to the wielding of a firearm with effect, but also to any employment of a deadly weapon, including simple possession, *if such possession facilitates the associated felony*. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Crim.App. 1989); *see also Gregg v. State*, 820 S.W.2d 191, 193 (Tex.App.—Fort Worth 1991, no pet.).

In the instant case the jurors heard testimony that:

(1) a semi-automatic Uzi and a Ruger assault rifle were found next to the cocaine on Sanchez's closet shelf;

(2) drug ledgers, two handguns, and a shotgun were found elsewhere in the bedroom;

(3) Sanchez admitted the room and guns were his;

(4) Sanchez's mother and sisters, the only other residents of the house, testified they knew nothing about the guns or drugs; and

(5) police officers testified that Sanchez was a mid-level drug dealer, that guns are used by dealers to protect themselves and intimidate drug users, and that appellant's weapons were capable of causing serious bodily injury or death.

Based on the officers' testimony and the existence of the types and locations of the guns in the house, the State argues that sufficient evidence existed for a rational juror to conclude that Sanchez, although he was not present during the search of his house, used or exhibited the guns to facilitate the commission of the instant offense.

We believe the cumulative effect of factors enumerated above is sufficient to warrant a rational trier of fact to conclude that Sanchez "used" the firearms to facilitate his care, custody, and management of the contraband. *See Patterson v. State*, 769 S.W.2d at 942. We therefore hold the evidence was sufficient to support the jury's affirmative finding to the deadly weapon special issue.

Given our disposition of point of error one, we reverse and remand the case to the trial court for new trial.

DAUPHINOT, J., dissents without written opinion to the court's ruling on point of error two.