Shabazz v. State Bar 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-096-CV

     EL-HADI T. SHABAZZ,
                                                                                              Appellant
     v.

     THE STATE BAR OF TEXAS,
                                                                                         Appellee

From the 74th District Court
McLennan County, Texas
Trial Court # 93-1251-3
                                                                                                    

MEMORANDUM OPINION
                                                                                                    

      El-Hadi Shabazz appealed from a judgment that disbarred him, ordered him to surrender his
law license and permanent State Bar card to the Chief Disciplinary Counsel of the State Bar, and
prohibited him from holding himself out as an attorney capable of practicing law. Tex.
Disciplinary R. Prof. Conduct 8.04(a)(3) (1994), reprinted in Tex. Gov't Code Ann., tit.
2, subtit. G, app. A (Vernon Supp. 1995) (State Bar Rules art. X, § 9); Tex. R. Disciplinary
P. 3.11 (1994), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A-1 (Vernon Supp.
1995). The transcript was filed in this court on May 11, 1995. No Statement of Facts has been
filed. Although Shabazz's brief was due on June 12, no appellant's brief has been filed. See Tex.
R. App. P. 5(a), 74(k). On October 11, the Bar filed a motion to dismiss this appeal for want of
prosecution. Id. 60(a)(1), 74(l)(1). Appellate Rule 74(l)(1) provides:
Civil Cases. In civil cases, when the appellant has failed to file his brief in the time
prescribed, the appellate court may dismiss the appeal for want of prosecution, unless
reasonable explanation is shown for such failure and that appellee has not suffered
material injury thereby. The court may, however, decline to dismiss the appeal,
whereupon it shall give such direction to the cause as it may deem proper.
Id. 74(l)(1).
      More than thirty days have passed since Shabazz's brief was due. The Bar's motion suffices
as notice to him that his brief is severely overdue. Id. 83. He has not responded to the Bar's
motion with grounds for continuing the appeal or a reasonable explanation for failing to file a
brief. Therefore, we grant the Bar's motion to dismiss. Id. 60(a)(1), 74(l)(1). 
      This appeal is dismissed for want of prosection. Id.
                                                                               PER CURIAM

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Dismissed for want of prosecution
Opinion delivered and filed October 25, 1995
Do not publish



s
of Davis attached to the mirrors. A non-operational scale was also found in a dresser drawer. 
No other male clothing was found in the house. Johnson testified that, besides the cocaine and
money, not much was in the suitcase besides a man’s shirt. 
          Officer Horace Knight found a purple Crown Royal bag on top of a china cabinet in the
living room. The bag contained two razor blades still in their packaging, a paper towel, and a
plastic bag. The paper towel had a light residue which he believed to be baking soda. Knight
testified that razor blades are used in various ways in the drug trade. 
          Vicki Jefferson testified that she lived at 2304 Trice with her two children by Davis. An
uncle, Darren Evans, also lived at the house. Jefferson stated that Davis did not live with her, that
he came to see his children about twice a week, and that she had broken up with him in January
1995 and had taken away his key. On the day the warrant was executed, Jefferson was out
shopping. At Davis’ request, she left the back door unlocked for him because he was arranging
to have her lawn mowed.
          Jefferson testified that she owned the suitcase, but denied knowledge of the cocaine. She
said she had not looked in the suitcase since September 1994. According to Jefferson, the suitcase
had been filled with “papers and junk.” On cross-examination she was shown a photograph of the
suitcase and agreed that it was not full of papers and junk; rather, it contained clothing. Jefferson
stated that the suitcase had been against the wall, not lying on the floor as officers had testified,
and that she had never seen Davis with the suitcase. 
          Jefferson testified that the bags of clothes found in her bedroom were Davis’ which she
had washed for him. Jefferson testified that the receipt in the suitcase was from March 1995 when
she had picked up Davis from the McLennan County jail. She stated that she had placed the
receipt on her dresser, had not moved it, and had not seen it in the suitcase.
POSSESSION
          The State must prove two elements to establish possession of a controlled substance: 1) the
accused exercised care, custody, control, or management over the contraband, and 2) the accused
knew the matter was contraband. Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). 
In proving knowing or intentional possession, the courts use the shorthand expression,
“affirmative links.” Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Whether the
evidence is direct or circumstantial, the State must establish “to the requisite level of confidence,
that the accused’s connection with the drugs was more than just fortuitous.” Id. 
          Courts have enumerated several factors to consider in determining possession: (1) the
defendant's presence when the search warrant was executed; (2) whether the contraband was in
plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the
defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed
other contraband when arrested; (6) whether the defendant made incriminating statements when
arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive
gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug
paraphernalia was present; (11) whether the defendant owned or had the right to possess the place
where the drugs were found; and (12) whether the place the drugs were found was enclosed. 
Collins v. State, 901 S.W.2d 503, 506 (Tex. App.—Waco 1994, pet. ref’d). "The number of
factors present is less important than the logical force of those factors, alone or in combination,
in establishing the elements of the offense." Martinets v. State, 884 S.W.2d 185, 188 (Tex.
App.—Austin 1994, no pet.).
SUFFICIENCY OF THE EVIDENCE
Legal Sufficiency
          Davis’ first point asserts that the evidence is legally insufficient to affirmatively link him
to the contraband. In reviewing a claim of legally-insufficient evidence, the reviewing court must
determine whether, after viewing the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560
(1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996).
          Looking only at the evidence favorable to the verdict, we find that Davis had been present
in the home during the day. Jefferson’s suitcase, which previously had been filled with “papers
and junk” now contained clothes and cocaine, money, and a McLennan County sheriff’s office
receipt for “Ronald Darrell Davis.” In bags next to the suitcase were Davis’ new and freshly
laundered clothes.
          We find the evidence legally sufficient. Id. 
Factual sufficiency
          In reviewing a claim of factually-insufficient evidence, we consider all the evidence and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone
v. State, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed). However,
because we will reverse on another point of error, we do not reach this question.
JURY SEPARATION
          Davis’ fourth point asserts that the court erred in allowing the jury to separate for lunch
over his objection. The jury retired for guilt-innocence deliberations at 10:46 a.m. At 12:15
p.m., while answering a jury note, the court asked counsel whether they had any objection to the
jury separating for lunch. Davis stated that he wanted to “keep the jury together.” The record
reflects that the “jury continued its deliberations.” At 6:32 p.m., in response to a jury note, the
court stated: “It is now 6:30 p.m. The jury in this case in 95-342-CR has been out. I retired the
jury to deliberate at 10:46 a.m. this morning. The jury did separate for lunch. They have been
in deliberations since that time.”
          Article 35.23 of the Code of Criminal Procedure provides in part:
The court on its own motion may and on the motion of either party shall, after having
given its charge to the jury, order that the jury not be allowed to separate, after which the
jury shall be kept together, and not permitted to separate . . . until a verdict has been
rendered or the jury finally discharged.

Tex. Code Crim. Proc. Ann. art. 35.23 (Vernon Supp. 1997). Prior to 1989, article 35.23
provided that, unless the defendant consented, the jury was not permitted to separate after the
reading of the court’s charge until a verdict was rendered or the jury was discharged. Code of
Criminal Procedure Act, 54th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317, 450; Harris v.
State, 738 S.W.2d 207, 211 (Tex. Crim. App. 1986). As amended, article 35.23 permits jurors
to separate unless the court or a party makes a motion to sequester the jury or timely objects to
the jury separation. Tex. Code Crim. Proc. Ann. art. 35.23; Gregg v. State, 881 S.W.2d 946,
950 (Tex. App.—Corpus Christi 1994, pet. ref’d).
          The State concedes that Davis objected to the separation, but argues that the record does
not establish that the jury “did in fact separate at that particular time.” The record is ambiguous
as to the timing of the separation. However, the timing of the separation is not dispositive. Davis
objected to the separation, and the court stated that “the jury did separate for lunch.” Once Davis
objected to the proposed separation, the provisions of article 35.23 became mandatory. Jackson
v. State, 931 S.W.2d 46, 47 (Tex. App.—Fort Worth 1996, no pet.); Sanchez v. State, 906
S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, pet. ref’d & pet. dism’d). Thus, the court erred
in allowing the jury to separate over Davis’ objection.
          The next question is whether a violation of article 35.23 is subject to a harm analysis. 
Tex. R. App. P. 81(b)(2). In Hood v. State, the Austin Court of Appeals held that a violation of
article 35.23, “under the particular facts and circumstances” of that case, was not subject to a
harm analysis. 828 S.W.2d 87, 96 (Tex. App.—Austin 1992, no pet.). The Fort Worth Court
of Appeals has applied Rule 81(b)(2):
[A]n appellate court cannot affirm a conviction under Rule 81(b)(2) after a trial court errs
by allowing a separation under article 35.23 unless concrete evidence exists in the record
on which the appellate court could meaningfully gauge or quantify the harm caused by the
trial court allowing the separation.
Sanchez, 906 S.W.2d at 179. Thus the Fort Worth Court reversed the conviction in Sanchez
because there was no evidence by which to gauge or quantify the harm. Id. at 180. In Jackson,
however, the same Court found that the State had presented “abundant” evidence that the jury
separation was harmless. Jackson, 931 S.W.2d at 48. 
          We believe that a harm analysis is appropriate. Id. at 47-8; Sanchez, 906 S.W.2d at 179. 
However, because there is no evidence from which we can quantify or gauge the harm done by
the separation, we cannot determine that the error was harmless. Tex. R. App. P. 81(b)(2);
Sanchez, 906 S.W.2d at 179. We sustain point four. 
          Having sustained point four, we do not reach Davis’ remaining points. We reverse the
judgment and remand the cause for a new trial on the merits.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed July 16, 1997
Do not publish 
[WITHDRAWN 9-17-97]