

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00025-CR

DERRICK FLORENCE                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2010-1034-D

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Derrick Florence was tried on six counts of aggravated sexual assault of a child less than fourteen years of age. A jury found him not guilty of four counts but guilty of two and assessed his punishment at 30 years' and 35 years' confinement, respectively. The trial court sentenced Appellant accordingly,

----------

[1]*See* Tex. R. App. P. 47.4.

ordering the sentences stacked. In three issues, Appellant contends that the trial court erred by (1) failing to charge the jury to render a unanimous verdict on each count, (2) denying Appellant's motion to sequester and (3) not declaring a mistrial. We affirm.

## Facts

C.B. testified that Appellant sexually assaulted her four to five times a week for a period of three years, beginning when she was six years old. She further testified that Appellant warned her he would kill her and her mother if she told anyone.

The jury retired to deliberate at 2:40 p.m. Before 5:00 p.m., it passed a note to the trial court. The record reveals the following as the trial court worked out its response to the jury's note with the assistance of counsel from both sides:

> THE COURT: [. . .] The jury has sent out a note. There are five questions on it, kind of more procedural rather than substantive. I'll read all the questions, and then we can formulate the answers.
>
> First question is: (*Reading*) Must we complete the deliberations today? The second question is: (*Reading*) What time should we stop deliberating for the day? No. 3 is: (*Reading*) If we cannot decide unanimously, what happens? No. 4: (*Reading*) If we have to stay, can food be provided? Five: (*Reading*) We would like to meet again at 8:30.
>
> . . . .
>
> [U]sually I need to refer to the charge of the Court, but pretty much all of them, except for that not being unanimous, can simply, I think, be answered without any concern of—must we complete deliberations today? Just no.
>
> . . . .

2

[APPELLANT'S COUNSEL]: Yeah. Now, that—that's an appropriate answer. I—I don't think you'll violate anything and cause any error by—by answering that, that—I think you could advise them that they can complete deliberations when—

THE COURT: Okay.

[APPELLANT'S COUNSEL]: —when and if they reach a unanimous verdict. There's no time limit.

THE COURT: And so to the—to the question, must we complete the deliberations today, anything further than a no?

[THE STATE]: Nope.

[APPELLANT'S COUNSEL]: No, ma'am.

THE COURT: Okay. Then I'm writing that.

To Question 2: (*Reading*) What time should we stopped [*sic*] deliberating for the day?

[THE STATE]: I mean, you can just say when you want to or 5:00 o'clock, I guess, would be my—

. . . .

[APPELLANT'S COUNSEL]: Yeah. I—I—I think—I think a good answer, you know, with all due respect to everybody here, I think, is: That's usually left up to the jury, but typically we recess at 5:00 o'clock. Would that—

THE COURT: I recess as close to 5:00 for security reasons these days. But I think it is their decision on it, but they certainly can recess at 5:00.

[APPELLANT'S COUNSEL]: Absolutely. . . .

THE COURT: . . . . Okay. So 2: (*Reading*) What time should we stop deliberating for the day? I think an appropriate response would be: The jury can decide how long they wish to deliberate, but you may stop at 5:00 if you choose.

3

[APPELLANT'S COUNSEL]:  I think that's fine.

. . . .

THE COURT:  All right.  Let me mention 4 and 5 to the attorneys here.  (*Reading*)  If we have to stay, can food be provided?  I'll just say:  You do not have to stay.

[APPELLANT'S COUNSEL]:  But food will be provided if you choose to or. . .

THE COURT:  Not unless they're sequestered.

THE BAILIFF:  We have to find a place that would deliver, and they have to pay for their own.  It's usually easier to let them go to supper.

THE COURT:  Okay.  Well, they're not sequestered, so they could go get some if they want to.

. . . .

[APPELLANT'S COUNSEL]:  But they've got to stay together.

THE COURT:  Well—

[APPELLANT'S COUNSEL]:  No, they—no, they don't have to stay together.  I'm sorry.  That—that's . . . .  That was an improper statement.  I'm sorry.  I'm thinking of something else.

THE COURT:  I—all right.  2:  if we have to stay, can food be provided?  My thought would be to respond:  You are not sequestered, and, therefore, you may take a break and obtain the food of your choice. . . . .

[APPELLANT'S COUNSEL]:  I thought the County paid for the pizza.

THE COURT:  I think it is only if they are sequestered.

[APPELLANT'S COUNSEL]:  Well, maybe.

4

THE COURT: All right. Well, let me ask this: (*Reading*) You are not sequestered, so you may break for dinner at your own expense. Is that—

[APPELLANT'S COUNSEL]: Or you can just say: The County does not provide food. You may break for dinner and get—

THE COURT: Right.

[APPELLANT'S COUNSEL]: —it on your own.

THE COURT: Yeah. County does not—yeah. You may break for dinner—I—I'm going to put County does not—


(*Pause in proceedings*)

THE COURT: —County does not provide it. All right. (*Reading*) We would like to meet again at 8:30 in the morning.

No problem.

[THE STATE]: No problem.

[APPELLANT'S COUNSEL]: No problem. Up to the jury. No problem.

THE COURT: Definitely, yes. No problem.

All right. The one in the middle: (*Reading*) If —if we do not—if we cannot decide unanimously what happened, I don't know that that really warrants an Allen charge right now. You are instructed that you can continue deliberating in the morning, would be my thought. Just tell them to deliberate. I think I need to be a little more firm.

[APPELLANT'S COUNSEL]: I—I think it's more appropriate to direct them to their jury instructions, as opposed to—

THE COURT: What part of the jury instructions is going to give their answer? I'm not pulling off—

[APPELLANT'S COUNSEL]: No, no. But—but you—that they should deliberate until they reach a unanimous verdict.

THE COURT:  (*Reading*)  If we cannot decide unanimously what happens––I––to me, if they said, we cannot reach a unanimous verdict, we are––we cannot do that, then I'd give them the Allen charge.

[APPELLANT'S COUNSEL]:  Yes.

. . . .

THE COURT:  And my thought is:  If you cannot decide unanimously what happens, you will be directed to continue deliberating.  You are instructed––

[APPELLANT'S COUNSEL]:  Or maybe:  Should that––you know, should that happen––should that happen, you'll be given additional instructions.  Because it––it does seem like it's not a conclusion at this point but what happens further on down the road.  So if indeed that does happen, you'll be given additional instructions.  Maybe?  I just want to make sure everything is clean and––

THE COURT:  I want to make them deliberate before they decide if they want––if they want to figure out what the instructions are, all we have to say is, we're not unanimous at this time.

[APPELLANT'S COUNSEL]:  Uh-huh.

. . . .

THE COURT:  How about:  You will be requested to continue to deliberate until you reach a verdict?

[APPELLANT'S COUNSEL]:  Sure.

Counsel for both sides agreed to the trial court's written responses to the jury's questions, and the trial court judge signed off on them and sent them to the jury.  Later that day, the jury asked to break for the night, and with no objections from either side, the trial court issued admonishments and released the jury until the next day.  The jury reconvened in the morning and deliberated until approximately 2:00 p.m., at which point it sent out the following note:

6

> With diligent deliberation all twelve jurors have reached their decisions and are firmly resolved. However, it is not unanimous. We honestly believe that no amount of additional deliberation will provide the necessary unanimous verdict.
>
> We understand the seriousness of the crime and the great responsibility the law has placed upon us.
>
> Given our position, what is the direction of the court?

The court issued an *Allen* charge, and the jury retired to the jury room and resumed deliberations. When it had deliberated for approximately two and a half more hours, Appellant moved for a mistrial based on a deadlocked jury. The trial court denied the motion, at which point Appellant moved to sequester. The trial court denied that motion as well, and after the jury had deliberated for the rest of the day without having reached a verdict, the trial court admonished and dismissed it for a second night. The jury retuned again in the morning and reached a verdict at 9:40 a.m.

## Untimely Motion to Sequester

In Appellant's first issue, he contends that the trial court erred by allowing the jurors to separate once deliberations had begun. But by failing to ask the trial court to sequester the jury until after the deliberations were already underway, Appellant has forfeited this issue.

We agree with our sister court in Austin, which has reasoned under similar circumstances,

> Appellant's right to have the jury sequestered is one that is forfeited if no motion to sequester is made. Therefore, to preserve

7

for appeal a complaint that the trial court has deprived him of the right to have the jury sequestered, the defendant must first timely request sequestration. A timely request is one that is made before jury deliberations begin or before the jury asks to separate. Without such a request, it is within the trial court's discretion to permit the jury to separate.

*Keiser v. State*, 880 S.W.2d 222, 223 (Tex. App.—Austin 1994) (pet. ref'd) (internal citations omitted).

Because the record shows that Appellant agreed to allow the jury to separate and did not ask that it be sequestered until it had deliberated for two full days, we hold that Appellant did not invoke his right to sequestration in a timely manner and has forfeited this issue for appellate review. *Cf. Sanchez v. State*, 906 S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, pet. ref'd) (holding that appellant preserved his claim by timely objecting to jury's first separation for lunch during trial). Accordingly, we overrule Appellant's first issue.

## Charge Error Caused No Egregious Harm

In his second issue, Appellant claims that the trial court's jury charge at guilt-innocence was improper because it failed to require a unanimous verdict on each count. The State concedes that the charge is erroneous under *Cosio v. State*, 353 S.W.3d 766, 774 (Tex. Crim. App. 2011) (concluding that court of appeals correctly held that charges allowed for the possibility of non-unanimous verdicts). The trial court's charge in this case instructed the jury on six allegations of sexual assault but contained only a single unanimity instruction.

The *Cosio* court explained,

First, non-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed. For example, if the State charges the defendant with the theft of one item and the evidence shows that the defendant had in fact stolen two of the same items, the jury's verdict may not be unanimous as to which of the two items the defendant stole. To ensure a unanimous verdict in this situation, the jury charge would have to make clear that the jury must be unanimous about which of the two items was the subject of the single theft.

Second, non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution. The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.

And third and finally, non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute. To ensure unanimity in this situation, the charge would need to instruct the jury that it has to be unanimous about which statutory provision, among those available based on the facts, the defendant violated.

*Id.* at 771–72.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. The State concedes that there was error in the charge: it did not sufficiently instruct the jury that it had to reach a unanimous verdict on each count of sexual assault.

Because the State correctly concedes error in the charge, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at

731–32.  The test for harm depends on whether Appellant objected to the erroneous charge.  Appellant did not object to the jury charge.  If there is error in the charge that was not objected to it at trial, we must decide whether the error was so egregious and created such harm that appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g);  *see*  Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.  *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Hutch*, 922 S.W.2d at 171.

When examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself; the evidence, including the contested issues and weight of the probative evidence; the arguments of counsel; and any other relevant information revealed by the record of the trial as a whole.  *Stuhler*, 218 S.W.3d at 719; *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); *Almanza*, 686 S.W.2d at 171.   The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  *Almanza*, 686 S.W.2d at 174.   Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.  *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

The trial court's charge to the jury contained a general unanimity instruction and provided six separate verdict forms. Both the State and Appellant explained to the jury that it was to reach a verdict on six separate counts. Jury communications with the court specifically referred to the need to reach unanimous verdicts. The jury convicted Appellant on Counts I and II, but acquitted him on the remaining four counts.

In arguing that the erroneous charge caused him harm, Appellant argues that the verdict implies that the jury either had doubts about the complainant's credibility or desired to extend leniency toward Appellant. Additionally, Appellant argues that the erroneous charge makes it impossible to determine whether jeopardy has attached to any given act alleged against him. At most, the harm that Appellant argues he has suffered is hypothetical. Given the jury's multiple communications with the trial court indicating its awareness that the verdicts were required to be unanimous, we hold that Appellant suffered no egregious actual harm, and we overrule his second issue.

## Mistrial Properly Denied

Two-and-a-half hours after the trial court issued its *Allen* charge, Appellant moved for a mistrial. Now, without citing authority, he claims that the trial court reversibly erred by denying his motion for mistrial because the jury had deliberated for eleven-and-a-half hours at that point.

The jury began deliberations at 2:40 p.m. on December 6. It sent out a note inquiring about food and what would happen if they could not reach a

11

unanimous verdict. The trial court and the parties agreed that the unanimity question did not require an *Allen* charge. The jurors were allowed to separate for the night, and were required to return to court to continue deliberating at 8:30 the next morning.

On December 7, the jury returned as instructed. It sent out a note with four questions related to the evidence. Later the same day, it sent out another note informing the court that it was not in unanimous agreement. Both the State and Appellant requested an *Allen* charge. The trial court read the *Allen* charge to the jury without objection. Two-and-a-half hours after the jury received the *Allen* charge, Appellant orally moved for mistrial. He points out that he did so after the jury had deliberated for more than eleven-and-one-half hours over two days. As grounds for his motion, Appellant cited the length of time the jury had spent deliberating, the notes it had sent to the trial court during deliberations, and its silence since receiving the *Allen* charge. The trial court denied the motion for mistrial, and the jury sent no additional notes stating that it had any difficulty reaching a verdict. At 9:40 the following morning, December 8, the jury reached a verdict.

There are no time limits on the amount of time a jury may deliberate. The length of time a jury may be held for deliberation in a criminal case rests in the sound discretion of the trial judge, who will not be reversed on appeal absent an abuse of that discretion. *Guidry v. State*, 9 S.W.3d 133, 155 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 837 (2000).

12

The jury was presented with an indictment that required them to consider allegations of six separate offenses. The evidence suggested that the offenses were alleged to have been committed over a period of several years. The offenses alleged were of a very serious nature, involving accusations of aggravated sexual assault of a child.  Although the trial court, as well as counsel for both parties, believed it was proper to respond to the jury note regarding lack of unanimity with an *Allen* charge, only a single *Allen* charge was required.

Nothing in the record suggests that the trial court abused its discretion by denying Appellant's motion for mistrial.  We therefore overrule Appellant's third issue.

## Conclusion

Having overruled Appellant's three issues on appeal, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 24, 2014