

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-18-00145-CR

SAVANNA MCINTARE
APPELLANT

V.

THE STATE OF TEXAS
STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. CR12692

----------

## MEMORANDUM OPINION[1]

----------

Appellant Savanna McIntare appeals her conviction for murder. In two points, she argues that the trial court erred by (1) excluding the testimony of two police officers concerning statements her daughter made to a forensic interviewer and (2) allowing the jury to separate during deliberations. We affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

## Summary of the Evidence

Because Appellant does not contest the sufficiency of the evidence to support her conviction, we will summarize the evidence to the extent necessary to contextualize her points.

The record shows that Appellant shot the victim—her husband, Don McIntare—twelve times at close range with three different pistols. Appellant testified at guilt-innocence. She admitted that she shot and killed Don. After killing Don, Appellant washed up; changed clothes; drove to the bank, a travel agent, and the airport; and flew to Vietnam. She was arrested upon her return to DFW Airport several days later.

Appellant testified that a few days before the shooting, her adult daughter, JP, told Appellant that Don had been sexually assaulting her for several years. Appellant testified that immediately before the shooting, she confronted Don with JP's allegation. She testified that a scuffle ensued, during which she shot and killed Don. JP did not testify at trial.[2]

During the guilt-innocence phase of trial, Appellant offered the testimony of two law enforcement officers—investigator T.D. Elam and Texas Ranger Michael

---

[2]Neither party called JP as a witness. The record shows that toward the end of the trial's guilt-innocence phase, the trial court became aware that JP was in the courtroom. The court stated that all witnesses had been placed under "the rule" and that JP would not be allowed to testify if she had been sitting in the courtroom while other witnesses testified. JP then told the court that if called by either party, she intended to invoke her Fifth Amendment privilege against self-incrimination.

Stoner—concerning statements the officers overheard JP make to a forensic interviewer at the Child Advocacy Center (CAC) about having been sexually assaulted by Don. Appellant made an offer of proof outside the presence of the jury. The State objected to testimony regarding JP's out-of-court statements on hearsay and relevance grounds, and the trial court granted the objection on both grounds. The exclusion of this testimony forms the basis of Appellant's first point, and we will examine the proffered testimony in more detail when we analyze that point.

Appellant requested and received a jury instruction on self-defense. The jury returned a verdict of "guilty" and, after hearing punishment-phase evidence, assessed punishment at twenty years' confinement. The trial court rendered judgment accordingly, and this appeal followed.

**Discussion**

**1.     Exclusion of Elam's and Stoner's Testimony**

In her first point, Appellant argues that the exclusion of Elam's and Stoner's testimony about JP's statement to CAC prevented Appellant from presenting her self-defense theory. The State argues that the trial court properly excluded the evidence because it was not relevant, it was hearsay, and it was inadmissible under Rule of Evidence 403.

We review a trial court's rulings on evidentiary objections for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). A trial court does not abuse its discretion unless its ruling is arbitrary and unreasonable;

3

the mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Foster v. State*, 180 S.W.3d 248, 250 (Tex. App.—Fort Worth 2005, pet. ref'd) (mem. op.). If the trial court's "evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Only relevant evidence is admissible. Tex. R. Evid. 402. Evidence is relevant when it makes a fact of consequence more or less probable than it would be without the evidence. Tex. R. Evid. 401.

### a. Appellant's Self-Defense Theory

Appellant first argues that the excluded testimony was relevant to her self-defense theory. Appellant contends that if the jury believed that JP told Appellant that Don had been molesting JP, the jurors could "understand that [Appellant] acted reasonably in perceiving Don's attack as a genuine risk of death or serious bodily injury." Appellant argues that the excluded testimony—that JP also told a third party that Don had molested her—makes it more probable that she told Appellant the same thing, thus bolstering Appellant's testimony.

To analyze Appellant's relevancy argument, we first review the applicable Penal Code sections on self-defense. A person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted

4

use of unlawful force." Tex. Penal Code Ann. § 9.31 (a) (West 2011). A person is justified in using deadly force against another if the actor would be justified in using force against the other under § 9.31 and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a)(2)(A) (West 2011). Thus, Appellant's relevance argument turns on whether the proffered testimony makes it more probable that she reasonably believed that deadly force was immediately necessary to protect herself against Don's attempted use of unlawful deadly force. *See id.*

### b. The Excluded Evidence

With the applicable Penal Code sections in mind, we next examine Appellant's proffered evidence. Outside the presence of the jury, Appellant elicited the following testimony from Stoner during the State's case in chief:

> [Counsel]    Following your conversation with [Appellant], you referred her daughter, [JP,] to have a forensic interview, is that right?
>
> [Stoner]    I did not do that.
>
> [Counsel]    Who did that?
>
> [Stoner]    I believe Detective Elam.
>
> [Counsel]    Detective Elam?
>
> [Stoner]    I'm not sure. I know I didn't make that contact.
>
> . . . .
>
> [Counsel]    What action did you take once [Appellant] told you that her daughter was sexually abused?

5

[Stoner]     We -- that happened during an interview, and she requested an attorney, so we didn't go any further with that.

[Counsel]     I understand. But you were made aware that a young girl was sexually abused. I'm asking, what did you do about it?

[Stoner]     Nothing further with that. She had already been interviewed.

[Counsel]     By who?

[Stoner]     By [CAC].

[Counsel]     Okay. And was that a part of this investigation?

[Stoner]     Yes.

[Counsel]     So between the 21st and the 25th, she had been interviewed by [CAC], is that what you're saying?

[Stoner]     Yes, sir.

[Counsel]     Let's see. And based on that interview, in the contents of that interview, did that shape your investigation in any way?

[Stoner]     On whose interview?

[Counsel]     The [CAC] interview. . . .

[Stoner]     We were working a homicide investigation at the time. The -- we followed through with the – [CAC] interview, because that was the natural transition to this investigation.

. . . .

[Counsel]     Have you determined if there may be any other motive during your investigation, besides that Don was molesting [Appellant's] daughter?

6

[Stoner]    We were investigating several motives, financial motives, infidelity, any -- any motive available, we were looking into.

[Counsel]    Okay. And -- and based on your investigation, did you arrive at one being the most likely?

[Stoner]    Yes, sir.

[Counsel]    What's that?

[Stoner]    That would be the sexual assault.

[Counsel]    And that would be part of the reason that your investigation continued to focus on [Appellant] and it continued to go forward as a murder as opposed to something else?

[Stoner]    Yes, sir.

Later, during Appellant's presentation of evidence, she elicited the following testimony from Elam outside the presence of the jury:

[Counsel]    Investigator Elam, did you see a forensic interview of the defendant's daughter?

[Elam]    Yes, I did.

[Counsel]    And what was the subject of the forensic interview?

[Elam]    It's just a normal procedure, when there's allegations made, to be interviewed at CAC.

[Counsel]    Right. But what was discussed during the interview?

[Elam]    Her home life in generalities and -- and if there was a problem between Don McIntare, Sr. and her.

[Counsel]    You've been in the room the whole time I've been talking, right?

[Elam]    Yes.

[Counsel]    Okay. They discussed Don McIntare sexually molesting his stepdaughter, [JP], right?

[Elam]    Yes.

[Counsel]    Okay. And you -- you were present when [JP] made those statements.

[Elam]    Yes.

[Counsel]    And whether they're true or not, you know that [JP] at least said that to the forensic interviewer, and Ranger Stoner was present when she said it and you were present.

[Elam]    Yes, that's correct.

[Counsel]    So the fact that she was making those statements, you're -- you have personal knowledge that she was making those statements.

[Elam]    Yes.

[Counsel]    Okay. Whether they're true or not.

[Elam]    Correct.

In summary, Stoner would have testified that CAC interviewed JP and that Don's sexual assault of JP was, in Stoner's opinion, the most likely motive for Don's murder. Elam would have testified that he overheard a discussion between JP and CAC about Don's sexually abusing JP.[3]

---

[3]Appellant characterizes Elam's proffered testimony this way: "Upon Defense Counsel pressing Elam, it became clear that Elam and Stoner heard [JP] tell the forensic interviewer that Don molested her." But as the State observes, Elam did not actually state that JP told the CAC interviewer that Don had abused her.

### c.   Appellant's State-of-mind Argument

Appellant argues that JP's statements to CAC were relevant to her state of mind when she shot Don. Appellant contends the jury "could have found [her] perception that Don was a threat more credible because the jury believed [she] was told that Don sexually abused [JP]." Appellant's argument comprises two inferential steps: (1) JP's statement to CAC makes it more probable that JP also told Appellant about the abuse and (2) if Appellant reasonably believed that Don molested JP, then she reasonably believed that Don was using unlawful force against her at the time of the shooting.

The problem with Appellant's argument is the second inferential step. Nothing in the admitted evidence or excluded testimony suggests a connection between Don's alleged sexual abuse of JP and the likelihood that he would use unlawful force against Appellant when she confronted him about the abuse. Nothing JP said to Appellant or CAC suggests that Don threatened physical violence against Appellant or any other person. Further, whatever JP said to CAC, she said it after Appellant killed Don, so JP's statements to CAC have no relevance to Appellant's state of mind at the time of the shooting.

In some circumstances, testimony from third persons may be relevant to a defendant's state of mind when the defendant claims self-defense. For example, in *Potier v. State*, the Court of Criminal Appeals held that a trial court erred by excluding testimony from the defendant and others that the victim told several people that he was looking for and intended to hurt and kill the defendant. 68

9

S.W.3d 657, 665–66 (Tex. Crim. App. 2002).[4] But Appellant's case is readily distinguishable from *Potier* because there is no evidence JP told Appellant that Don intended to hurt or kill her. Nor does Elam's and Stoner's proffered testimony suggest that JP made any such statement to CAC.

To support her state-of-mind argument, Appellant relies on *Henderson v. State*, 906 S.W.2d 589 (Tex. App.—El Paso 1995, pet. ref'd). In her brief, Appellant confuses the facts of *Henderson* with those of *Dyson v. State*, 672 S.W.2d 460 (Tex. Crim. App. 1984), which *Henderson* discusses. *See Henderson*, 906 S.W.2d at 595–96. Although both cases are superficially similar to this case, both are easily distinguishable. Both cases were homicide prosecutions in which the defendant shot the victim and claimed self-defense or defense of a third party. *Dyson*, 672 S.W.2d at 461–62; *Henderson*, 906 S.W.2d at 591–92. But in both of those cases, the excluded evidence concerned prior acts of physical violence committed against the defendant or others.[5] Thus, both

---

[4]The court went on to hold that despite the erroneous exclusion of the evidence, defendant was "not prevented from presenting the substance of his defense to the jury[,]" and the error was harmless. 68 S.W.3d at 666 (quoting *United States v. Willie*, 941 F.2d 1384, 1398–99 (10th Cir.1991) (finding harmless the exclusion of hearsay materials offered to show the defendant's state of mind, *cert. denied*, 502 U.S. 1106 (1992))).

[5]In both cases, the prior acts of violence were committed by someone other than the victim. In *Dyson*, the defendant claimed he thought the person at whom he fired his gun was his brother, who had made violent threats against him. *Dyson*, 672 S.W.2d at 461–62. In *Henderson*, the defendant thought her ex-husband, who had made threats against her, was present at the scene where the shooting occurred. *Henderson*, 906 S.W.2d at 593.

cases are distinguishable from this case because here the excluded testimony did not concern prior acts of physical violence committed by Don. Unlike the excluded testimony in *Henderson* and *Dyson*, Stoner's and Elam's excluded testimony has no bearing on whether Appellant reasonably believed Don was using unlawful force against her when she shot him.

Because there is no connection between JP's statements to CAC and the reasonableness of Appellant's belief that deadly force was immediately necessary to protect herself against Don's attempted use of unlawful force, we reject Appellant's argument that Elam's and Stoner's proffered testimony was relevant to show her state of mind when she shot Don.

**Appellant's Other Relevancy Arguments**

Appellant argues that Elam's and Stoner's testimony was relevant for two additional reasons. First, Appellant argues that Stoner's proffered testimony was relevant to show Stoner believed her motive for shooting Don was that Don had sexually abused JP. In other words, if Stoner thought sexual abuse motivated the shooting, then Stoner believed JP's allegations; if Stoner believed JP's allegations, then it is more likely that JP made the same allegations to Appellant; if JP made the abuse allegations to Appellant, it is more probable that Appellant believed deadly force was necessary to protect herself from Don. Thus, argues Appellant, what Stoner believed about her motive is relevant to her self-defense theory.

11

Motive is not an essential element of a criminal offense, but evidence of motive is relevant when it fairly tends to raise an inference that the accused had a motive to commit the crime alleged. *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982); *Bisby v. State*, 907 S.W.2d 949, 958 (Tex. App.—Fort Worth 1995, pet. ref'd). Usually, the State is the proponent of motive evidence; this case is unusual because Appellant offered, rather than objected to, motive evidence.

In any event, Appellant's relevancy argument based on motive is flawed for the same reason as her state-of-mind relevancy argument: whether Stoner believed Don's sexual abuse of JP motivated Appellant to kill Don is irrelevant to Appellant's belief about the need to use deadly force after she confronted Don.

Finally, Appellant argues that from the testimony that Elam sent JP to the CAC interview, "the jury could learn that Elam's testimony that he merely collected physical evidence [at the crime scene] was untrue" and that the excluded testimony would allow the "jury to evaluate [Elam's] view of the investigation." But Appellant fails to explain how the extent of Elam's investigation was relevant to any issue before the jury, particularly in light of her admission that she shot and killed Don.

We hold that Stoner's and Elam's proffered testimony was not relevant to any issue before the jury; therefore, the trial court did not abuse its discretion by excluding the evidence. *See Tienda*, 358 S.W.3d at 638. We overrule Appellant's first point.

**2.    Jury Separation**

In her second point, Appellant argues that the trial court erred by allowing—over her objection—the jury to separate for lunch during its deliberations on both guilt-innocence and punishment and that the error was constitutional. The State concedes that the trial court erred but argues that a nonconstitutional harm analysis applies.

While the jury was deliberating on guilt-innocence, the trial court announced that it intended to allow the jury to separate for lunch and asked whether either side objected. Appellant objected, but the trial court overruled the objection and allowed the jury to separate. The same thing happened while the jury was deliberating on punishment.

### a.  Error in Allowing Separation

The relevant statute is Code of Criminal Procedure article 35.23, which provides in part:

> The court on its own motion may and on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate, after which the jury shall be kept together, and not permitted to separate except to the extent of housing female jurors separate and apart from male jurors, until a verdict has been rendered or the jury finally discharged.

Tex. Code Crim. Proc. Ann. art. 35.23 (West 2006). A trial court errs by allowing a jury to separate over a defendant's timely objection. *Sanchez v. State*, 906 S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, pet. ref'd & pet. dism'd).

13

Here, the trial court allowed the jury to separate for lunch during both guilt-innocence and punishment deliberations over Appellant's timely objections. Therefore, the trial court erred by allowing the jury to separate. *See id.*

**b. Harm analysis**

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex. R. App. P. 44.2. If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R. App. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

When this court last analyzed harm in connection with jury separation twenty-three years ago, the current Rules of Appellate Procedure, including rule 44.2, had not yet been adopted. *See Sanchez*, 906 S.W.2d at 180 (analyzing harm under former rule 81(b)(2)). But several of our sister courts have conducted jury-separation harm analyses under current rule 44.2, and all of them have determined that a violation of article 35.23 is a statutory violation, not a constitutional error. *See, e.g.*, *Dixon v. State*, 455 S.W.3d 669, 683–84 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Polk v. State*, 367 S.W.3d 449, 454 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Campbell v. State*, 189 S.W.3d 822, 826 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Casias v. State*, 36

14

S.W.3d 897, 900 (Tex. App.—Austin 2001, no pet.); *see also Rojas v. State*, 986 S.W.2d 241, 252 (Tex. Crim. App. 1998) (Keller, J., concurring) ("Because any error is statutory (failure to comply with Art. 35.23) rather than constitutional, the proper test for harm is provided by R. 44.2(b) of the Texas Rules of Appellate Procedure[.]"). Today we join our sister courts and hold that a violation of article 35.23 is a statutory violation, not a constitutional error.

Because we determine that the error is not constitutional, rule 44.2(b) applies. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The record reflects that before allowing the jurors to separate for lunch during guilt-innocence and punishment deliberations, the trial court admonished the jurors to continue to follow all of the instructions the court had previously given to them and specifically instructed the jurors not to discuss the case with anyone and not to resume deliberations until all twelve jurors were assembled in the jury room.

Appellant's brief does not address harm under rule 44.2(b). But in her constitutional-harm argument, appellant suggests that the trial court prevented her from showing jury misconduct on the record. After the jury returned from lunch and resumed guilt-innocence deliberations, the jury requested certain testimony from the trial court. The trial court prepared a response to the jury's request, to which appellant made several objections. After defense counsel objected to the court's response, the following colloquy occurred:

> [Defense counsel]: . . . I objected earlier to the jurors separating. . . . Under 35.23, it's mandatory that the Court keep the jurors together . . . . It's also my understanding that the jurors trickled in after the lunch hour, and jurors were in the jury room, not all 12 together. I don't know whether they were given an instruction not to deliberate until all 12 were together. I would ask the Court to inquire of the court officer and each of the jurors as to the conduct during the lunch hour.

> THE COURT: Well, the record will reflect that I gave them that instruction, not to begin deliberating until all 12 were reassembled in the jury room. . . . I'll overrule that objection.

As noted above, the record does reflect that the trial court instructed the jury not to deliberate until all twelve jurors were assembled.

To the extent appellant suggests that the jurors might have committed jury misconduct by ignoring the trial court's instruction and deliberating with fewer than all twelve jurors present, we note that appellant could have attempted to support a misconduct argument by obtaining affidavits from jurors or other persons in a position to know the facts. *See* Tex. R. App. P. 21.3; *Dugard v. State*, 688 S.W.2d 524, 529 (Tex. Crim. App. 1985) (requiring a defendant to

support a motion for new trial alleging jury misconduct with affidavits and explaining policy behind requirement), *overruled in part on other grounds by Williams v. State*, 780 S.W.2d 802 (Tex. Crim. App. 1998). "A defendant is not entitled to a 'fishing expedition' into supposed jury misconduct." *Id.* We therefore reject appellant's argument that the trial court prevented her from creating a record for appeal.

Nothing in the record reflects that the jury failed to follow the trial court's instructions. Nor does the record indicate any other harm flowing from allowing the jurors to separate. *See Polk*, 367 S.W.3d at 454 (holding violation of article 35.23 harmless when record did not show that jury failed to follow trial court's instructions or that other harm occurred from allowing jurors to separate). The trial court's error in allowing the jury to separate during deliberations did not affect a substantial right and was harmless error. *See* Tex. R. App. P. 44.2(b). We overrule appellant's second point.

## Conclusion

Having overruled both of Appellant's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  WALKER, GABRIEL, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

17

DELIVERED:  June 14, 2018